# McAlpine, *et al. v.* The State.

*Indictment for Miscegenation.*

1. *Admissibility of confessions; must be shown to have been made voluntarily.*—All confessions are, *prima facie*, involuntary; and, in order to render them admissible in evidence, it must be shown that they were voluntarily made, without the application of hope or fear, or extraneous inducement by pressure in either of these directions; and in the absence of the proper predicate for the introduction of evidence, a mere general objection to the evidence, or that the questions propounded called for illegal and incompetent evidence, is sufficient to authorize their exclusion.

2. *Evidence; admissions or confessions made by one of two defendants admissible against one making them, if voluntarily made.*—Where two defendants are indicted and tried jointly, admissions or confessions made by one of them, though not in the presence of the other, are admissible against the one making them, provided it is shown that they were made voluntarily.

3. *Criminal prosecution; prosecutor may testify in rebuttal that he was advised by justice of the peace to commence the prosecution.*—In a criminal case, where a witness on cross-examination testifies that he

[McAlpine *et al.* v. The State.]

instituted the prosecution, it is permissible for him, in rebuttal, to testify that the justice of the peace advised him to commence the prosecution against the defendants.

4. *Evidence of character ; when witness not shown to be competent to testify thereto.*—Where, in the examination of a witness, he testifies that he never heard any one discuss the character of a certain other named witness until this case was called for trial, and could not tell who he heard discuss it, that his opinion of said witness' character was based both on what other people thought of him and what he knew of him himself, but did not state that he knew what was the general character of said witness, such witness is incompetent to testify as to the character of the witness inquired about ; and his testimony as to said witness inquired about being "a fussy old man," is inadmissible and should be excluded.

5. *Criminal prosecution ; when statement of the justice of the peace that he advised the commencement of the prosecution admissible.*—Where, in a criminal prosecution, one of the witnesses for the State, on cross-examination, testified that he instituted the prosecution, and in rebuttal that he was advised thereto by a justice of the peace, the evidence of the justice of the peace referred to, that he advised said witness that he could sue out a warrant against the defendants, is admissible, as tending to sustain the motive of the witness referred to and the character of his evidence.

6. *Miscegenation ; when evidence intended to show bias on the part of the witness is admissible.*—On a trial under an indictment for miscegenation, it is not permissible to allow the State, on cross-examination, of a witness introduced by the defendants, to ask him if he was not on the bond of a person indicted with the mother of one of the defendants for the same offense ; the evidence sought to be elicited being too remote to show a discrediting bias on the part of the witness.

7. *Same ; irrelevant evidence.*—On a trial under an indictment for miscegenation, evidence as to the collection of rents from the mother of one of the defendants, and as to how much rent the mother and said defendant paid, is irrelevant to any issue in the cause, and is inadmissible.

8. *Character witness ; irrelevant evidence.*—Where a witness, after testifying that the character of another witness for truth and veracity, in the community where she lived, was bad, and that he would not believe her on oath, further testifies that he owned the house in which said witness lived, the fact as to whether or not said witness, whose character was thus sought to be impeached, paid her rent, is irrelevant to any issue in the case ; and evidence in reference to such fact is inadmissible.

9. *Same; admissibility of evidence.*—Where a witness has testified that he knows the general character of another witness who was examined in the case, and it was good, the fact that he had heard people discuss the character of the witness inquired about, but could not

tell who they were, and that he had heard people say the witness "was a before-the-war negro," and that his estimate of his character was based upon what he had heard others say and what he knew himself, does not render the evidence of such witness, as to the good character of the witness inquired about, inadmissible.

10. *Trial and its incidents; polling of jury; when verdict sustained.*— Where, in a criminal case, upon the return of a verdict of guilty, the defendant demands a polling of the jury, and during the polling one of the jurors, in answer to the question "Is this your verdict?" stated "I submitted to it," and upon the court asking said juror did he acquiesce in the verdict and agree to it, he replied, "I did," the answer of the juror shows that it was his verdict; and in the absence of any other facts disclosed in the polling of the jury, the verdict is properly sustained.

11. *Charges to the jury; court not required to repeat instructions already given.*—When a charge requested is, in effect, the same as a charge already given by the court, it is not error for the court to refuse such charge; the court not being required to repeat what has already been substantially given in another charge.

12. *Miscegenation; charges ignoring intention of defendants.*—On a trial under an indictment for miscegenation, charges to the jury requested by the defendants, which ignore any reference to any intention that existed on the part of the defendants to continue the hypothesized illicit acts, are erroneous and properly refused; for if defendants lived together in adultery for a single day, intending to continue the illicit connection, a conviction might properly be had.

APPEAL from the City Court of Talladega.

Tried before the Hon. JOHN W. BISHOP.

The appellants, Will McAlpine, a negro man, and Lizzie White, a white woman, were indicted, tried and convicted of miscegenation, in living in adultery with each other.

The evidence for the State tended to show that Lizzie White, who was a white woman, lived in a house of two rooms with her mother; that in that house there also lived a negro man named Joe Gantt and his four children, and that only one room of the house was occupied by all of the residents; that Will McAlpine lived in Talladega near the negro college, and that the house where Lizzie White lived was in a suburb of Talladega known as Needmore; that Will McAlpine had been seen numbers of times going to the house occupied by Lizzie White late in the evening and returning from the house of Lizzie White early in the morning; that he had been seen eating with the defendant Lizzie White in her house, and

that they had been seen in bed together. Several witnesses testified to these different facts.

Witnesses were introduced by the defendants for the purpose of impeaching several State witnesses, and each of these witnesses so introduced by the defendants testified that they knew the general character of the several State witnesses inquired about, in the community in which each respectively lived, and that the character of each of said witnesses was bad, and that the character of each of said witnesses for truth and veracity was bad; and that from such knowledge of the character of each of such witnesses they would not believe them on oath. There was other evidence introduced in behalf of the defendants tending to contradict the testimony of some of the witnesses for the State. The State, in rebuttal, introduced several witnesses to sustain the testimony of the witnesses which had been examined in behalf of the State; and each of such witnesses testified that the character of the witnesses for truth and veracity and their general character was good.

Ed Lewis was introduced as a witness by the State and testified that he knew the general character of C. Bishop, and that it was good; that he had heard people discuss his character, but could not tell the jury any single person that he had heard discuss it; that what he had heard people say was that "he was a before-the-war negro," and that his estimate of said character was based on what he had heard others say, and what he knew of him himself. The defendants separately and severally moved to exclude the testimony of this witness, on the ground that his knowledge of the character of C. Bishop was insufficient. The court overruled this motion, and the defendants separately and severally excepted. There were several rulings of the court upon the evidence to which exceptions were reserved. These rulings are sufficiently set forth in the opinion.

Upon the introduction of all the evidence, the defendants requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: "A. The court charges the jury, that if they believe from the evidence that Will McAlpine lived with his mother, near the College, and that Lizzie White lived with her mother, in Needmore, and that they did not live together in adul-

tery or fornication, they should acquit the defendants; and that before the defendants, or either of them, could be convicted, the evidence must satisfy their minds beyond a reasonable doubt, that the defendants did more than occasional acts of illicit or criminal intimacy." "B. The court charges the jury, that even should they be reasonably satisfied from the evidence that defendant, Lizzie White, was engaged in keeping or helping to keep a house of prostitution, where negro men had sexual intercourse with white women, or with said Lizzie, and that defendant, Will McAlpine, went to such house on different occasions, and had sexual intercourse with said Lizzie White, still these facts alone would not be sufficient to warrant the jury in convicting either defendant under this indictment." "C. A woman who keeps or helps to keep a house of prostitution is not guilty of living in adultery, as charged in this case, with a man who at such house merely has occasional acts of criminal sexual intercourse with such woman; and if such facts constitute all that is shown beyond a reasonable doubt in this case, then no matter if the jury are satisfied of such facts beyond a reasonable doubt, the jury, under their oaths, should acquit the defendant." "D. The keeping of a house of prostitution is an offense against the laws of Alabama, for which a defendant may be indicted and convicted, but these defendants are not charged with that offense in this case, and can not be convicted upon this trial upon evidence which only reasonably satisfies the jury beyond a reasonable doubt of the keeping of such house of prostitution, notwithstanding the evidence may further so satisfy the jury that at such house defendants were guilty of different acts of criminal sexual intercourse."

Upon the return of the jury into the court room from the jury room after their deliberation, the court asked the jury if they had agreed upon a verdict. The foreman of the jury replied that they had, and handed to the clerk a paper from which the clerk read the verdict, finding the defendants guilty as charged in the indictment, which verdict was signed by one of the jurors as foreman. Thereupon the defendants demanded that the jury be polled. During the polling of the jury under the order of the court, the clerk of the court asked M. W. Beavers, one of the jurors, the following question:

7

"Mr. Beavers, is this your verdict?"   To this question Mr. Beavers answered :   "I submitted to it."   Thereupon the court asked said Beavers :   "Mr. Beavers did you acquiesce in this verdict and agree to it?"   The said Beavers replied : "I did."   The defendants then challenged said verdict, and objected to its reception by the court.   The court refused to sustain said challenge, and overruled the objection, and to this ruling the defendants severally and separately excepted.

NEWMAN & WEBB and CECIL BROWNE, for appellants.—
1. All confessions are *prima facie* involuntary, and a motion to exclude a confession, though the questions calling for the confession were not objected to, if patently inadmissible, should be granted.—*Beckham v. State*, 100 Ala. 17; *Gregg v. State*, 106 Ala. 48; 1 Greenleaf on Evidence, § 220 and note. Confessions to be admissible, must be voluntary, and that they are voluntary must appear. The burden is on the State to show that such motives did not prompt the confession, and until this is shown, they are involuntary and inadmissible.— *Washington v. State*, 106 Ala. 61; *Kelly v. State*, 72 Ala. 244; *Sullins v. State*, 53 Ala. 474.

2. Motive is an inferential fact, and the witness Bishop could not testify that warrant was issued because Thornton, a justice of the peace, advised him to do it.—*Garrett v. State*, 97 Ala. 18; *Burke v. State*, 71 Ala. 382; *Whizenant v. State*, 71 Ala. 383.

3. Evidence of character must be confined to the time of and anterior to the alleged commission of the offense for which defendants were tried.   Headen and Curry based their estimation of the character testified about on what they heard after this trial was commenced and entered upon and what they knew personally of the parties. Lewis had only heard that Bishop was a "before-the-war negro," and his estimation of Bishop's character was based on this fact and what he knew of said Bishop personally.   All this testimony was clearly illegal, and defendants' motion to exclude it should have been granted.— *White v. State*, 111 Ala. 96; *Jackson v. State*, 106 Ala. 12; *Holmes v. State*, 88 Ala. 26; *Moulton v. State*, 88 Ala. 116; *Buchanan v. State*, 109 Ala. 7.

4. The evidence of Adams about the bail bond of Joe Gantt, of Turner and of Beavers about the rents of Lizzie

and Jennie White, tended to shed no possible light on the main inquiry in this case, and its effect was to obtrude upon the minds of the jury matters foreign to the issue involved and to unduly multiply the issues, and was patently and unquestionable illegal testimony.—*Mattison v. State,* 55 Ala. 224; *Durrett v. State,* 62 Ala. 434.

5. The charges requested by the defendants and which were refused by the court, asserted correct propositions of law and should have been given.—*Quartemas v. State,* 48 Ala. 269; *Bodiford v. State,* 86 Ala. 68; *Smith v. State,* 68 Ala. 424; *Judge v. State,* 58 Ala. 406; *Carson v. State,* 50 Ala. 134; *Williams v. State,* 47 Ala. 659.

WILLIAM C. FITTS, Attorney-General, for the State, cited, *Holmes v. State,* 88 Ala. 26; *Smith v. State,* 88 Ala. 73; *Moulton v. State,* 88 Ala. 117; *Thompson v. State,* 100 Ala. 70; *Walker v. State,* 104 Ala. 57; *Street v. State,* 67 Ala. 87; *Robertson v. State,* 99 Ala. 189.

HARALSON, J.—1. The witness for the State, Alice Madison, was asked, if she had had any conversation with defendant, Lizzie White, within the last twelve months; when and where it was; who, if any one was present; the circumstances of the conversation, and what was said? The defendants' counsel objected, on the ground that both defendants were not shown to be present, and because it called for evidence that was illegal, irrelevant and incompetent. The court stated to the jury, that any such conversation would be treated in its effect as to Lizzie White alone, and overruled the objection. The witness answered stating, that Lizzie White, at the well, between her own and the witness' house, in February, 1897, had a conversation with her, in which Lizzie told her "that she did not have to work; that her fellow, Will McAlpine, kept her up; that Will was her fellow, and she was Will's woman." The defendant then moved to exclude the answer, on the grounds, that Will McAlpine was not present at the conversation, and it was not admissible as to him, and because the evidence was incompetent, irrelevant and illegal, and the court overruled the motion.

The answer was properly limited by the court to Lizzie White, to let it in as to her, if not objectionable on other grounds.

It has been repeatedly held, that all confessions are *prima facie* involuntary, and in order to render them admissible it must be shown *prima facie* that they were voluntarily made, without the appliances of hope or fear, without extraneous inducement or pressure in either of those directions from other persons ; and this is a condition precedent to their admissibility. Otherwise they are *prima facie* involuntary and illegal. A mere general objection to the evidence, or that the question propounded calls for illegal and incompetent evidence, is sufficient for their exclusion, in the absence of a proper predicate for their introduction.—*Bradford v. The State*, 104 Ala. 68 ; *Beckham v. The State*, 100 Ala. 15 ; *Gregg v. The State*, 106 Ala. 44 ; *Redd v. The State*, 69 Ala. 255, 259 ; *Young v. The State*, 68 Ala. 570, 575.

No proper predicate was laid for the introduction of the evidence, and the court should not have admitted it. This disposes of other similar confessions deposed to by other witnesses, as to each of the defendants.

2. On cross-examination of the State's witness, C. Bishop, the witness was made to answer, that he had commenced this prosecution, and had had the parties arrested. The evidence was called out to discredit the witness, by showing his feeling against defendants. In the rebutting examination, the solicitor asked the witness, to "state whether W. T. Thornton, the justice of the peace, advised you to commence this prosecution against defendants," and he was allowed, against the objection of the defendants,—that the State could not prove the motive of the witness in commencing the prosecution etc.,—to state that he did. The objection was untenable. It was proper for the witness to testify on the examination in rebuttal to this fact, as tending to rebut the discredit sought to be placed on his evidence by defendant.—*Johnson v. The State*, 100 Ala. 55 ; *Campbell v. The State*, 23 Ala. 76.

3. The witness, Andrew Headen, was allowed to state, "for what it was worth,"—as the court ruled,—"that he had never heard anybody discuss C. Bishop's character, till this case came up for trial, and couldn't tell who he had heard discuss it ; that his opinion of C. Bishop's character was based both on what other people thought of him, and what he knew of him himself ; that he had heard that he, C. Bishop, was a fussy old man."

He did not state that he knew his general character and what it was. This was a method of proving character unsanctioned by any rule on the subject. If the evidence was not allowable for that purpose, it was not for any other, and should have been rejected.

4. The evidence of Thornton, the justice of the peace who advised C. Bishop that he could sue out a warrant against defendants, was not improper, in that it tended to sustain the motive of the witness, and the character of his evidence, sought to be discredited by defendants, by proving that he was their prosecutor.

It was error to allow the State, on cross-examination of defendants' witness, Adams, to ask him if he was not on the bond of Joe Gantt, indicted in the same court with defendants, for miscegenation with Jennie White, the mother of the defendant, Lizzie White. The evidence was too remote to show a discrediting bias on the part of the witness.

5. The defendant proved by Dee Turner that he collected rents from Jennie White, shown to be the mother of Lizzie, living in the same house with her. The State was allowed on the cross to ask the witness, "How much rent did Lizzie and Jennie pay?" If it was proper to prove by the witness that he collected rents out of Jennie, there was no error in allowing the State to inquire of him how much he collected out of her, even if it was not proper as to how much he collected out of Lizzie; but the objection did not extend that far. It related to the answer of the witness as a whole. We may add, however, that we fail to see the relevancy of this evidence as to rents, to any issue in the cause.

6. Squash Beavers testified that he owned the houses that defendants lived in, and also the one in which Alice Madison lived. Alice had been examined for the State, and this witness, Beavers, examined by defendants, had just testified that her character for truth and veracity in the community where she lived was bad, and he would not believe her on oath. The State was allowed to ask him, against defendants' proper objection, "Did Alice Madison pay her rent?" What her payment of her rent had to do with the issues, we have been unable to discover. Such a collateral matter, not affecting the issues, should not have been allowed in the case. The same may be said of the questions which followed, by the

solicitor to this witness : "State if you rented the house to Lizzie and Jennie White?" ; and "Who rented the house to Lizzie and Jennie White?" Answers were given, to the first, that he did not, and to the second, that C. Bishop rented it to them.

7. N. Lewis for the State, in rebuttal, testified that he knew the general character of C. Bishop, a witness for the State, and that it was good. The fact that he had heard people discuss his character but could not tell who they were ; that he had heard people say that "he was a before-the-war negro," and that his estimate of his character was based on what he had heard others say, and what he knew himself, did not render his evidence as to his good character inadmissible.—*Holmes v. The State*, 88 Ala. 26.

8. There is nothing in the point raised against the verdict. The juror in reply to the question propounded by the court, answered that he acquiesced in and agreed to the verdict. That was sufficient to show that it was his verdict.

9. Charges A, B, C and D asked by defendants were properly refused. Charge A was a proper instruction, but the court at the request of defendant gave twenty-five written charges, more than half of which related specially to living in adultery, covering as it seems every possible phase of it, some of them the same in substance and legal effect as charge A. The court was not bound to repeat a charge already given at defendant's request. The fact that the charge contained the hypothesized statement, "that if the jury believed from the evidence that Will McAlpine lived with his mother near the college, and Lizzie lived with her mother in Needmore," was of no material effect, distinguishing it in substance from other charges that had been given for defendants to the same substantial effect, which did not contain that statement. It did not matter where the local habitations of the parties were ; for, the controlling question in this case was, without any special reference to that matter, whether the parties lived together in adultery. Moreover, the places of their respective habitations was not a matter, as to which the evidence was in conflict, for there was no dispute as to where they each lived, and all the charges given at the request of defendant, were given with reference to this undisputed fact.

[Cox v. The State.]

10. Admitting all that is hypothesized in charges B, C and D, the jury might nevertheless have found the defendants guilty of living in adultery. They each ignored any reference to any intention of the parties for a continuance of the hypothesized illicit acts ; for, if they lived together in adultery for a single day, intending to continue the illicit connection, a conviction might have been had.—*Linton v. The State*, 88 Ala. 216 ; *Walker v. The State*, 104 Ala. 56. The charges, moreover, were misleading, invasive of the province of the jury, and faulty generally.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.