169 So.2d 27

**Cecil Bernard PUGH**

v.

**STATE.**

**1 Div. 978.**

Court of Appeals of Alabama.

Nov. 17, 1964

———◆———

John F. Taylor, Jr., Demopolis, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

Appeal from conviction of grand larceny with sentence of three years in the penitentiary.

The State proved that in September, 1962, various chattels of Mr. W. H. Griffin, Jr., to the value of $150.00 "went missing."

Robert Henderson, then currently in Kilby Prison, testified that he, Albert Buckalew and Pugh took the property from Griffin's house to Henderson's car.

The State then sought, as demanded by Code 1940, T. 15, § 307,[1] to corroborate Henderson's evidence. The sheriff was called and testified:

"Q. Have you had occasion to talk to the defendant since that time in regard to this larceny case?

"A. Well, I was in the presence of you and him when you were talking to him.

"Q. Where was that conversation?

"A. Down in the back office of the sheriff's office.

"Q. When was it?

"A. Wyman, I don't recall the exact date, but it was before last court date of spring court, it was before then, and what brought the subject up you and this gentleman here were discussing probation for him, a suspended sentence.

"Q. Who else was present, if anyone?

"A. I don't recall anyone being.

"Q. Did anyone at that time offer him any reward or hope of reward or threaten him in any way to induce him to make a statement?

"A. No, sir.

"Q. Did he make a statement there in regard to his activities down there?

"A. He said he went fishing with those boys regularly and the best my

1. "§ 307. A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

memory serves me, he said he was in the car.

"Mr. McCall: I object to the testimony he is giving. It is in the nature of a confession and I think we should have the exact words.

"Q. Give his answer and what his statement was the best of your ability. What did he say?

"Judge Lindsey: He said the best of his memory—wasn't that the words you used?

"A. Yes, sir.

"Judge Lindsey: I sustain the objection.

"Q. I will withdraw the question and ask you if at that time and place did he make a statement in substance.

"Mr. McCall: I object to him leading, making a statement for the witness.

"Judge Lindsey: Don't lead.

"Q. What did he say at that time and place?

"A. He said that he went fishing on numerous occasions with—I believe he said the boys was a Buckalew boy and this Henderson boy, neither one I personally know until I saw this boy in court today, and he said, the best of my recollection.

"Mr. McCall: I object.

"Judge Lindsey: I sustain the objection to the best of his recollection.

"Mr. McCall: If he can't remember definitely.

"Judge Lindsey: The witness can use the words in his best judgment, but in his best recollection, I sustain the objection

"Q. What did he say in your best judgment, what was the words he used?

"A. That he didn't go in the house and help participate in actually carrying out the stuff, but he was in the car. That was what it all rounded out to be. I don't remember the exact words.

"Q. But he was in the car?

"A. He was in their company.

"Mr. McCall: I object and move to exclude that.

"Judge Lindsey: On what grounds?

"Mr. McCall: It is leading.

"Judge Lindsey: I overrule the objection. Don't lead him, Mr. Solicitor.

"Q. That was here in the office before the last term of court?

"A. Yes, sir.

"Q. Was he in custody at that time?

"A. No, sir, he wasn't in custody at that time.

"CROSS EXAMINATION BY MR. McCALL:

"Q. Is this the same time he came in after learning he was wanted and came in and gave himself up?

"A. No, sir, it was sometime later. I don't recall the exact date. I think the warrant will show the exact date he was arrested, and this was during the spring term of court.

"Mr. Gilmore: The State rests.

"Mr. McCall: I move the evidence be excluded on the basis it is the uncorroborated testimony of an accomplice.

"Judge Lindsey: I will charge the jury on what the law on conspiracy is and it is a jury question for them to say.

"Mr. McCall: I except to the court's ruling."

I.

We hold that the statement is not a confession. It does not admit guilt. It only

admits that Pugh was in the company of Henderson and Buckalew.

■ To make Pugh a principal in the second degree or an accessory and thereby equally guilty as an actual offender,[2] the State must adduce some legal evidence implying that he either recruited, helped or counseled in preparing the theft or took or undertook some part in its commission. Criminal agency in another's offense is not shown merely by an exhibition of passivity. People v. Woodward, 45 Cal. 293, 13 Am. Rep. 176. That Pugh was derelict in not stopping the others would, if anything, be another crime not embraced in the indictment. Hollinger v. State, 40 Ala.App. 281, 112 So.2d 220.

In Wildman v. State, 42 Ala.App. 357, 165 So.2d 396, we said:

"Though Wildman was in bad company, yet neither burglary nor assault with intent to murder falls within the so-called status crimes (e. g., vagrancy) whereunder imputing guilt by association has some evidentiary scope. Toney v. State, 60 Ala. 97—'common prostitute'; Brannon v. State, 16 Ala.App. 259, 76 So. 991—gamblers, 'birds of a feather.' "

Moreover, the claimed inculpatory evidence came about in an atmosphere of the defendant's negotiating for a suspended sentence.

■ An attempt to compromise a criminal prosecution is not ordinarily admissible under the theory of its being an admission of guilt, unless it is unequivocally in the nature of a confession. Wilson v. State, 73 Ala. 527; Sanders v. State, 148 Ala. 603, 41 So. 466; Fuller v. State, 34 Ala.App. 211, 39 So.2d 24; see also dissenting opinion of

Simpson, J., in Wilson v. State, 31 Ala.App. 560, 19 So.2d 777, adopted in Wilson v. State, 246 Ala. 129, 19 So.2d 780.

It follows that there was no corroboration of Henderson's testimony.

### II.

Pugh took the stand. He did not bring in any proof of his good repute or his good repute for honesty or integrity.

■ The State brought in witnesses to rebut Pugh's credibility, i. e., that he enjoyed a bad reputation. Pugh having testified, bared his credit to the slings and arrows of impeachment.

■ Over objection the solicitor was permitted to ask if Pugh enjoyed a bad reputation for being a thief. This was error and the affirmative answer was prejudicial. McElroy, Evidence (2d Ed.), § 27.02; Wigmore, Evidence (3d Ed.), § 923.

Foster, J., in Cooley v. State, 233 Ala. 407, 171 So. 725, gave an abstract statement, viz.:

" * * * For impeachment of a witness the law permits evidence of general character, not limited to truth and veracity, *but not including special traits not affecting truth and veracity * *.*" (Italics added.)

This we paraphrase: A witness may be impeached by evidence against his "general" character as well as against his repute for telling the truth. But his reputation for telling the truth cannot be made out by testimony of his reputation for special traits of character which do not "affect" his reputation for telling the truth.

2. Code 1940, T. 14, § 14: "The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors." See B.Com. iv., 34.

3. Leonard v. Pope, 27 Mich. 145, cited in 7 Mayfield's Digest, Witnesses, p. 971.

■ "Special" traits such as dishonesty[3] ("thieves"); bad repute for writing libellous letters;[4] being a "common thief";[5] a woman's paying or not paying her own rent;[6] for violence and turbulence;[7] for being a dirty fighter;[8] have all been rejected as subjects of enquiry. See also Thomas v. State, 41 Ala.App. 19, 122 So.2d 731; Stearns v. State, 266 Ala. 295, 96 So.2d 306; Bedsole v. State, 274 Ala. 603, 150 So.2d 696.

■ Aside from accomplices and convicted perjurers, no one group, whether saints or sinners, is *legally* presumed to be more prone to be liars than another. Factually, weight may be given to a witness's conviction for crimes of turpitude. Code 1940, T. 7, § 434; T. 15, §§ 305–307.

The rule here brought to bear was stated in Kilgore v. State, 124 Ala. 24, 27 So. 4:

"The defendant having testified as a witness in his own behalf, this made it competent for the state to offer impeaching evidence on general reputation, as in the case of any other witness. * * *"

When at nisi prius, Judge Carr gave the following direction to a jury, quoted with approval in Green v. State, 238 Ala. 143, 189 So. 763:

" * * * When a man is on trial in a criminal case, he has a right, when he is proceeding with his case, to introduce evidence to show that he is a man of good character. [See Williams v. State, 250 Ala. 549, 35 So.2d 567; Griffin v. State, 26 Ala.App. 473, 162 So. 457.] If, however, he *does not* introduce that evidence then the state has no right to introduce evidence to show that he is a man of bad character. However, when a defendant testifies in his own behalf, the defendant, just like any other witness, puts in issue his character for truth and veracity, and only for truth and veracity; but the law says this, that the State, when the defendant testifies, the State then can introduce evidence of witnesses which would tend to show that the defendant is a man of bad reputation, and the State does not have to go any further than that.

" * * * 'However, the jury cannot consider it in any other way except in weighing the testimony of the witness. So, that evidence is to be considered by you only in determining what truth or what verity or what weight you will give to the defendant's testimony in this case.'" (Italics and bracketed matter added.)

■ Impeachment of witnesses on collateral matters is confined to general repute and truth and veracity. Thus in McAlpine v. State, 117 Ala. 93, 23 So. 130, we find, per Haralson, J.:

"Squash Beavers testified, that he owned the houses that defendants lived in, and also the one in which Alice Madison lived. Alice had been examined for the state, and this witness, Beavers, examined by defendants, had just testified that her character for truth and veracity in the community where she lived was bad, and he would not believe her on oath. The state was allowed to ask him, against defendants' proper objection, 'Did Alice Madison pay her rent?' What her payment of her rent had to do with the issues we have been unable to discover. Such a collateral matter, not affecting the issues, should not have been allowed in the case. * * *"

---

4. Cox v. State, 162 Ala. 66, 50 So. 398.
5. McCutchen v. Loggins, 109 Ala. 457, 19 So. 810.
6. McAlpine v. State, 117 Ala. 93, 23 So. 130; but this is not an instance of evidence of repute.
7. Dolan v. State, 81 Ala. 11, 1 So. 707; Stearns v. State, 266 Ala. 295, 96 So. 2d 306.
8. Bedsole v. State, 274 Ala. 603, 150 So. 2d 696.

## 504

More to the point of instant concern, we have Coleman, J., in McCutchen v. Loggins, 109 Ala. 457, 19 So. 810:

"In impeaching a witness, it is not competent to ask the impeaching witness if he knows the general character of the witness 'for truth and veracity, and honesty and integrity,' or was he not a 'common thief.' In many of our earlier decisions the enquiry was confined to 'general character for truth and veracity.' The later decisions, and the sounder rule, has extended the inquiry to 'general character' generally. 'Integrity and honesty' enter largely as elements of good character, but the rule has not been relaxed or extended to inquiries into specific constituents of character, other than for 'truth and veracity,' when the character of the witness for credibility is assailed. It would not be safe to enlarge the scope of inquiry further, lest we have the moral habits of the witness inquired into, and also his regard for, and observance of, religious orthodoxy. * * *"

Supreme Lodge Knights and Ladies of Honor v. Baker, 163 Ala. 518, 50 So. 958:

"The defendant attempted to prove one vice or moral dereliction as a circumstance tending to show the existence of another not necessarily or vitally connected with it as cause or effect. This could not be done, and the court properly ruled thereon. McCutchen v. Loggins, 109 Ala. 458 (6th headnote), 19 South. 810. * * *"

### III.

For both these erroneous rulings below, the judgment is due to be reversed and the cause remanded.

Reversed and remanded.

JOHNSON, J., concurs in result.

