A jury found appellant guilty of the murder of Jack Dewitt.[1]
The court fixed his punishment at imprisonment for life and sentenced him accordingly.
Ms. Evelyn Post testified that a short time before the commencement of the official investigation, Jack Dewitt was living at her home at Spanish Fort and that while the two were eating supper the door suddenly opened and a man walked in. He was swinging a gun and told Dewitt, "I'm going to kill you, Jack Dewitt." According to the witness: the intruder ordered Dewitt to come with him, they left the house, the intruder put Dewitt into the trunk of Dewitt's Cadillac, and the witness never saw Dewitt again. The witness described the gun as a handgun with a black barrel and orange handle. The witness further said that she immediately notified the law enforcement authorities by telephone.
Another witness called by the State was Officer Walter Crook, an investigator for the Baldwin County Sheriff's Department, who promptly commenced an investigation of the alleged "kidnapping . . . abduction" and soon (on March 2, 1981) located Dewitt's Cadillac automobile while it was "still . . . smoldering in and around it." He secured the place and steadfastly cooperated with other law enforcement authorities whose efforts resulted in the apprehension of appellant and his incarceration in the Mobile County jail, from which he was taken to the jail in Baldwin County on March 18, 1981. He testified to an inculpatory statement made by the defendant at the Mobile County jail and to a written and signed inculpatory statement made by him after he was transferred to the Baldwin County jail.
According to the undisputed evidence, an investigation by legal authorities of the burned automobile was commenced within a few hours after it was found. Among the contents of the trunk of the automobile were charred bones of a human being that were identified by Dr. Leroy Riddick of the Alabama Department of Forensic Sciences in Mobile as the bones of Mr. Jack Dewitt. He testified:
 "Well, in addition to being burned, being burned very severely, there were multiple fragments and a fragment. And the fragments were put on a sand model, mold and reconstructed and glued together. When it was glued together, they showed a gunshot exit wound on the back of the head.
 "Now, it had to have been done prior to his being burned because the bones were all broken up, so the bullet wouldn't have made that kind of hole in the bones that were all broken up. There were three or four pieces that had to be fitted together to see that exit defect."
Appellant raises this issue in his brief:
 "Whether the trial court committed reversible error . . . in allowing into evidence the appellant's inculpatory statements."
In the concluding paragraph of appellant's brief on this issue, it is stated:
 "At no time did the State prove that appellant wasn't mistreated during confinement. The only testimony presented *Page 195 
in this regard was the circumstances of his confinement during the time the appellant made his inculpatory statements. That is insufficient proof that the statements were voluntarily made and it establishes that the court failed to apply the `totality of the circumstances' test before admitting into evidence the extrajudicial admissions. Unless the possibility of psychological or physical coercion is negated, the statements are not to be admitted. It was also not incumbent upon the defendant (appellant herein) to take the witness stand and to testify as to the conditions of his confinement. Rather, the burden was upon the State to prove that his statement was indeed a voluntary one."
Appellant's attorney (not defendant's counsel on the trial) relies heavily upon the following answer of Officer Crook to one of many questions asked him on direct examination:
 "He was, you know, appeared to be crying. He was in an emotional state."
The following is a pertinent part of appellant's argument in his brief:
 "As mentioned previously in this brief, there was no testimony or proof offered which could describe the conditions of confinement the appellant was subjected to prior to his making the purported confessions. The state made no attempt to state the condition of the appellant's confinement nor did the court take the same into consideration before admitting the statements into evidence. The trial court, therefore, committed reversible error in allowing into evidence the said inculpatory statements."
Although we agree with appellant's contention that not all of the circumstances and conditions of appellant's confinement can be determined from the evidence, we cannot agree with his contention that error was committed in permitting either appellant's oral or his written inculpatory statement to be introduced in evidence. Furthermore, we note that we are not definitely informed by the transcript as to how long he was in jail in Mobile County. However, the transcript is replete with evidence, including particularly the testimony of Officer Crook and the signed acknowledgment of defendant, to the effect that defendant waived all pertinent constitutional rights, that he voluntarily, understandingly and freely made the inculpatory statements and that there had been plenary compliance with the warnings and other requirements of Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1002, 16 L.Ed.2d 694 (1966). There is nothing in the transcript that even remotely suggests that while in jail defendant had been mistreated in any way. Moreover, it is to be noted that prior to the introduction of the evidence now considered, the following occurred:
 "MR. ENFINGER: [Defendant's attorney]: Judge, we need to take care of something outside the presence.
"THE COURT: Take the jury out. "(Jury out).
"MR. ENFINGER:
 "Judge, at this point, the defense believes that the State's about to introduce evidence of an oral and written inculpatory statement by the Defendant. The Defendant maintains that those were not voluntarily given. After conferring with the Defendant and as part of trial strategy, we are not going to object to the admission of those statements, evidence of the admission of the statements into evidence and are going to confront that issue in the inculpatory statements in that light, the issue, and present it to the jury for their consideration, the statements of the Defendant that they were not voluntarily, intentionally given, leaving that up to the jury to determine the weight and credibility of the statements.
 "We just want it in the record that we are knowledgeable of the contents of the interrogation form and as inculpatory statements of the Defendant. We wish to proceed along the lines I have described giving the Defendant the opportunity to rebut in front of the jury, the statements given.
"MR. NORTON [District Attorney]:
"Any objections to the copy? *Page 196 
"MR. ENFINGER:
 "No objection to the introduction of the evidence and copy thereof.
"THE COURT:
 "Well, go ahead and prove freely and voluntarily made, though, Tom.
"MR. NORTON:
"Certainly.
"THE COURT:
"Anything else?
"MR. ENFINGER:
"No.
"(Jury in)."
We conclude that there was no error relative to the admission in evidence of the inculpatory statements.
The only other issue presented by appellant is thus stated in appellant's brief:
 "Whether the trial court committed error in denying appellant's motion to exclude and to direct a verdict of acquittal at the close of the state's case when the state had failed to prove that the appellant committed the crime alleged to a moral certainty."
Although there was no testimony of an eyewitness as to the death of the alleged victim, the evidence was sufficient to present a jury issue as to whether defendant murdered him. In support of his contention as to the question of the sufficiency of the evidence, appellant relies largely, if not exclusively, upon the testimony of Barbara Ann Irwin, who had also been charged with the murder of Jack Dewitt and who, in her testimony, denied having "anything to do with Jack Dewitt's murder." She testified that another person, whom she named, told her that "he killed Jack Dewitt." In appellant's brief, it is stated:
 ". . . In Ex Parte Acree, 63 Ala. 234 (1879), Justice Stone declared
 No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires.
 "From the foregoing it is clear that if the possibility exists that some other than the defendant committed the criminal deed, and the state fails to rebut and neutralize this possibility, then it has failed to meet its burden of proof sufficient to sustain a conviction. . . ."
Appellant has quoted correctly from the opinion in Ex parteAcree but has inadvertently overlooked the two sentences immediately preceding the quoted sentence, which are as follows:
 "The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. (Emphasis supplied.)"
Appellant correctly states in his brief:
 ". . . This Court held in Graham v. State, 374 So.2d 929 (Ala.Cr.App. 1979) that
 It (evidence) is not sufficient to support a conviction if it does not exclude to a moral certainty every other reasonable hypothesis but that of the guilt of the accused (emphasis supplied)."
Appellant is mistaken in his conclusion that "if thepossibility exists that someone other than the defendant committed the criminal deed" there has been a failure to meet the burden of proof sufficient to sustain a conviction. As the authorities which he cites (cited above also) hold, the test as to the point, as applied to the instant case, is whether the evidence excluded every reasonable hypothesis other than that of defendant's guilt. We think that the jury could conclude, as it obviously did by its verdict, that the evidence met such test beyond a reasonable doubt. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his *Page 197 
opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.
[1] The copy of the indictment in the record before us shows the name of the alleged victim to be "Jack Dueitt," but throughout the entire transcript of the proceedings his name is shown as "Jack Dewitt." No point was made on the trial as to this apparent discrepancy, and no contention is made on the subject on appeal. We make no effort to determine whether any misnomer is involved or, on the other hand, whether the names are idemsonans, and we proceed to the rendition of an opinion as if the mentioned discrepancy did not exist.