Appellant, Michael Wayne Jones, was indicted by the October 1984 Term of the Talladega County Grand Jury for criminal possession of a forged instrument in the second degree. See Ala. Code 1975, § 13A-9-6. On April 12, 1985, a jury found appellant guilty as charged in the indictment. Appellant was sentenced to a term of seventeen years in the State penitentiary.
Appellant contends that the trial court erred to reversal in denying his motion for a directed verdict at the close of the State's case, due to insufficient evidence upon which to justify a conviction. Two other issues have been raised; however, our disposition of the sufficiency of evidence question makes it unnecessary to address the remaining issues.
This case involves the taking and forging of a United States Treasury check issued to Mr. George A. Matson of 215-B South Broadway, Sylacauga, Alabama. The check was endorsed with the purported signature of "George A. Matson" and "Eddy Magouyrk." Magouyrk did not testify at trial. Matson testified that he received a pension from the Veteran's Administration and routinely received Treasury checks in the mail around the first of each month. His February 1984 check did not arrive on the first day of February, but this did not alarm Matson because they were sometimes "a day or two late." Matson never received the February check originally issued to him.
The State introduced a copy of United States Treasury check number 59,020,676, in the amount of $286, to George A. Matson as payee, dated February 1, 1984. Matson identified this check as the type he *Page 1184 
normally received from the Veteran's Administration. Matson did not receive this check and the signature of "George A. Matson" appearing on the back of the check was not his, nor was it authorized by him.
Matson testified that he and his wife were home the entire day of February 1, 1984. They were waiting on the check to arrive. According to Matson, he did not observe appellant at any time during that day. Matson stated that had appellant rung the doorbell of his house, it would not have been heard because the doorbell did not work.
Mrs. Matson testified that she and her husband usually stayed in the back of the house, where the television is located, and could not hear anyone knocking on the front door. Mrs. Matson stated that she can hear a knock from the front porch if she is in the kitchen, but visitors "usually come around to the back."
Officer Patricia B. Thompson of the Sylacauga Police Department testified that during the morning hours of February 1, 1984, she was directed to proceed to "South Broadway" street. While driving down South Broadway, she observed appellant walking up the sidewalk that led to 215-A South Broadway, which was the residence of Mr. and Mrs. George Matson. Appellant went to the steps of this residence and at that point Thompson turned a corner and appellant was out of her range of vision. Thompson stopped her vehicle and waited for appellant to "come back off the step." Thompson could not see what appellant was doing at the step or on the porch. Appellant left the porch and proceeded on his way. Subsequently, Thompson approached appellant in order to ascertain what he was doing on the Matsons' porch. Appellant stated that he was "looking for a job." Appellant agreed to go "downtown" with Thompson. Prior to departing, Thompson conducted a pat-down search of appellant's person, which resulted in the discovery of a cigarette lighter and a pocket knife. Appellant was then taken to Detective Murchinson's Office.
Mrs. Jeanette Hill testified that she worked at "Hill's Moco on Highway 280 between Sylacauga and Childersburg." On February 2, 1984, a customer entered her store, selected some merchandise, and offered a check to pay for the items. This check was issued to a George A. Matson as payee. Hill stated that she had the money to cash the check, but did not due to "woman's intuition." After the customer departed, Hill contacted Mrs. Matson and asked if her husband had received a V.A. check. Hill then called the police.
Hill further testified that appellant was not the person who attempted to cash the check. On cross-examination, Hill revealed that she knew appellant, and that he was in the car with the person who attempted to cash the check at her store. She stated that there were three people in the car as it drove away.
Mr. David Benefield testified that he operated a service station and grocery store in Sylacauga. On February 2, 1984, he cashed a check for Eddy Magouyrk, which listed George Matson as payee. Magouyrk told Benefield that the check belonged to a buddy at work who asked him to cash it. Benefield stated that he had known Magouyrk since "he was a kid." Benefield did not observe appellant with Magouyrk when the check was cashed; however, he observed three "heads" in the car in which Magouyrk departed.
Officer Frankie Wallis of the Talladega County Sheriff's Department obtained the check from Benefield. Wallis turned the check over to Lieutenant Alvin Kidd, Chief of Detectives of the Sylacauga Police Department. Kidd turned the check over to Secret Service Agent Joe Robinson. Robinson sent the check to the Secret Service laboratory in Washington, D.C., where the check underwent fingerprint, and apparently, handwriting analysis. The fingerprint of Eddy Robert Magouyrk was lifted from the check. Apparently, nothing in the analysis implicated appellant; his fingerprints were not found on the check and no testimony was introduced concerning handwriting analysis. *Page 1185 
It was after this testimony that appellant's motion was made. Although we do not consider the following testimony (which was elicited either outside the presence of the jury or after appellant's motion) in our disposal of the present issue, we include such for the reader's benefit.
During the State's case in chief, but outside the presence of the jury, Murchinson testified that he interviewed appellant concerning a report of a man going door to door down Broadway. Appellant told Murchinson that he was doing nothing wrong and that if Murchinson did not believe him, Murchinson could search him. A second search was conducted and nothing was found on appellant's person. Murchinson also testified (and this testimony was before the jury on rebuttal at the close of appellant's presentation of evidence) that appellant denied taking any checks before any mention had been made of checks; however, appellant denied this and testified that Murchinson first asked him if he had been taking checks. Appellant was allowed to leave after he was searched.
Appellant testified at trial in his own behalf. Appellant stated that he was a painter and did odd jobs for a living. On February 1, 1984, appellant was looking for work by going door to door seeking odd jobs and yard work. He admitted being in the South Broadway area, but did not specifically recall the address 215-B South Broadway. Appellant's testimony was consistent with that of Officer Thompson and Detective Murchinson, except that appellant contends the police officers initially accused him of searching mailboxes in the area.
Appellant admitted that he was in the car with Eddy Magouyrk on February 2, 1984. According to appellant, Magouyrk and Wesly Allen invited him to ride around and drink beer. Appellant got into the car with them, at which point Magouyrk told Allen that he needed to go to the bank to cash a check. Appellant stated that he never saw the check Magouyrk was attempting to cash, nor did the parties discuss the check. Magouyrk ultimately cashed the check and obtained gas, beer, and wine. Appellant was with Allen and Magouyrk approximately thirty to forty-five minutes.
The State's evidence was entirely circumstantial. Appellant was at or near Matson's residence on February 1, 1984. Appellant was searched, but no check was found. The State proved, and appellant admitted, that he was with Magouyrk in an automobile on the date Magouyrk cashed the check.
Upon conclusion of the State's evidence, appellant moved for a "directed verdict" on the ground that the State failed to prove a prima facie case. We must decide whether these facts constitute sufficient evidence upon which to convict appellant.
In reviewing the sufficiency of the evidence we must view the evidence in the light most favorable to the State. Cumbo v.State, 368 So.2d 871, 874 (Ala.Crim.App. 1978). "We must review the evidence before the trial court at the time the motion was made." Thomas v. State, 363 So.2d 1020, 1022 (Ala.Crim.App. 1978). Our review of the sufficiency of the evidence is based wholly on the evidence before the jury at the time the motion was made. "A conviction may be had on evidence which is entirely circumstantial, so long as that evidence is so strong and cogent as to show defendant's guilt to a moral certainty."Tanner v. State, 291 Ala. 70, 71, 277 So.2d 885, 886 (1973). See also, Williams v. State, 468 So.2d 99 (Ala. 1985). "The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." Cumbo, 368 So.2d at 874.
 "Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, *Page 1186 
by that full measure of proof which the law requires."
Ex parte Acree, 63 Ala. 234 (1879) (quoted in Williams, supra). See also Dolvin v. State, 391 So.2d 133 (Ala. 1980); Weeks v.State, 428 So.2d 193 (Ala.Crim.App. 1983). A trial judge should not permit a case to go to the jury if the evidence "raises a mere suspicion, or, admitting all it tends to prove, a defendant's guilt is left in uncertainty, or dependent upon conjecture or probability, . . . for such evidence does not overcome . . . the presumption of innocence with which every accused is charitably clothed under our system of jurisprudence." Parker v. State, 280 Ala. 685, 692,198 So.2d 261, 268 (1967).
Section 13A-9-6 (a) states that "[a] person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument of a kind specified in section 13A-9-3 with knowledge that it is forged and with intent to defraud." Section 13A-9-3 (a)(1) specifies a check to be an instrument subject to these provisions. While the State's evidence clearly proved that Magouyrk violated § 13A-9-3, it wholly failed to prove that appellant "possessed" or "uttered" a forged instrument with "knowledge" that it was forged and "with intent to defraud." The State's evidence showed that appellant was at or near the residence of Matson at a time when the V.A. check was expected to arrive, and that a day later appellant was in an automobile with the person who ultimately "possessed and uttered" the check. The State's evidence also showed that the check was not always delivered on time, and that appellant was searched on February 1, 1984, and no check was found. The State would argue that the inference to be drawn is that appellant took the check from Matson's mailbox, and that, based on that inference, it can be inferred that appellant gave the check to Magouryk, who forged the endorsement of Matson and presented it for payment.
Appellant's presence at the Matson residence and his presence in the automobile with Magouyrk certainly present some evidence that appellant may have been involved with the taking and uttering of the check; however, we do not believe that the "evidence excluded every reasonable hypothesis except that of guilt." Williams, supra. The least that can be inferred as a counter-hypothesis is that appellant was searching for work on February 1, 1984, and had nothing to do with the taking of the check. No evidence was presented as to what date or time the check actually arrived, and the Matsons' testimony admitted that they would not have heard appellant knock at their front door if they were in the back of the house where they normally stayed. There was no evidence that appellant ever possessed the check or that he received any proceeds from the cashing of the check. We do not believe appellant's mere presence at or near the check, on the two occasions previously discussed, constituted sufficient circumstantial evidence upon which to base a conviction. "The mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime." Lollar v. State,398 So.2d 400, 402 (Ala.Crim.App. 1981), and cases cited therein. We are also mindful of the Supreme Court's holding inDolvin v. State, 391 So.2d at 137, citing Kimmons v. State,343 So.2d 542 (Ala.Crim.App. 1977), where the Court noted that "if presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tends to connect the accused with the commission of the crime, then the jury may find the accused guilty." In the case sub judice, we find no facts and circumstances which tend to connect appellant with the crime, other than his presence in close proximity to the check on two occasions, especially in light of the fact that we do not know when the check actually arrived at the Matson residence. Although this may be considered an extraordinary coincidence, such does not rise to the level of sufficient circumstantial evidence upon which to convict appellant for the crime charged. *Page 1187 
The trial court charged the jury on complicity. If appellant is to be found guilty under the facts of this case, his guilt would have to be based on complicity, § 13A-2-23, Code of Alabama 1975. This provision states:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense. . . ."
In order to convict appellant under this complicity provision, "the State must adduce some legal evidence implying that he either recruited, helped or counseled in preparing . . . [to commit the crime] or undertook some part in its commission. Criminal agency in another's offense is not shown merely by an exhibition of passivity." Pugh v. State,42 Ala. App. 499, 502, 169 So.2d 27, 30 (1964). Clearly the State must prove more than appellant's mere presence at the scene. We find the evidence presented by the State to be insufficient to prove appellant's guilt under a theory of complicity. The only inference raised by the State's evidence is that it is possible that this appellant participated in the commission of this offense. Beyond this possibility, one must resort to speculation to establish the appellant's criminal agency in the offense charged.
We find that the jury's verdict could only have been based upon suspicion, innuendo, or conjecture, and therefore, the trial court should have granted appellant's motion for judgment of acquittal or "directed verdict" at the close of the State's case. The United States Supreme Court has mandated that "the Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence legally insufficient,"Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1
(1978). We therefore find that we have no choice but to reverse the judgment of the lower court and render a judgment for the appellant.
REVERSED AND RENDERED.
All Judges concur.