BURKE, Judge.
Whitney K. McClellion appeals her convictions for four counts of unlawfully breaking and entering a vehicle, violations of § 13A-8-11, Ala.Code 1975, one count of theft of property in the second degree, a violation of § 13-8-4, Ala.Code 1975, and three counts of theft of property in the third degree, violations of § 13A-8-5, Ala. Code 1975.
McClellion was originally indicted on 15 counts of unlawfully breaking and entering a vehicle, 8 counts of theft in the second degree, 6 counts of theft in the third degree, 1 count of criminal mischief in the second degree, and 1 count of the attempt to unlawfully break and enter a vehicle. Before McClellion’s trial, the State moved to dismiss 21 counts; the circuit court granted that motion. At the conclusion of the State’s evidence, the State moved to dismiss two additional counts, McClellion was found guilty as to each of the 8 remaining counts, and the circuit court granted that motion.
The State presented evidence at trial that indicated the following. In September 2012, Kathy Dooley noticed that someone had broken into her car and that “many things that were in the car were missing.” (R. 21.) The missing items included a white purse, a makeup bag, a pistol, a scarf, and some prescription medicine bottles. Dooley had not given anyone permission to enter her car or to take the missing items. Dooley was a real-estate agent and also kept T-shirts bearing her advertising logo in her car. She gave the T-shirts to clients who had used her agency to purchase or to sell real estate. Also in September 2012, Jessica Howell and her husband, Benton Howell, noticed that someone had broken into, and had taken items out of, their vehicles. The items taken from the Howells’ vehicles included Benton’s briefcase, a “brown book of DVDs and a bottle of tanning lotion and some tanning goggles.” (R. 37.) Neither of the Howells had given anyone permission to enter their vehicles or to take the missing items.
Lieutenant Steven Adams, an investigator with the Autauga County Sheriffs Office, received a telephone call reporting the fraudulent use of a credit card at the Key West Inn Motel (“the Key West”) in Mill-brook. Lieutenant Adams went to the Key West and learned that Room 109. had *383 been rented to Jeremy Holley[1] for the nights of September 16-18, 2012. The payment for the nights of September 16 and 17 had been made with MeClellion’s MasterCard credit card; the payment for the night of September 18 had been made with the MasterCard of Donald Dempsey, the man who had reported the fraudulent use of his credit card. The motel registration indicated that Holley and McClellion had been staying in the room the first two nights and that Holley and Dempsey had been staying there on the last night. The desk clerk allowed Lt. Adams to enter Room 109, and Lt. Adams, who was aware of thefts from vehicles in Autauga County, observed many items inside the room. Because the Key West is in Elmore County, Lt. Adams contacted an Elmore County law-enforcement officer, who obtained a search warrant for Room 109.
After obtaining the search warrant, law-enforcement officers entered the room and found, among other things, items that had been taken during the thefts from the Dooley and Howell vehicles. Men’s and women’s items were found in the room. On a bedside table, Lt. Adams found a piece of paper on which MeClellion’s name had been written. At his office, Lt. Adams used the memory card from a camera that had been found in Room 109 and found a photograph that contained information identifying a woman named Rachel Boles. Lieutenant Adams contacted Boles, who checked her car, which was the last place she had seen her camera, and found that her camera was missing. Boles, who lived within the Prattville city limits, had not given anyone permission to enter her car and take possession of her camera. Lieutenant Adams obtained arrest warrants for McClellion and Holley.
Holley turned himself in to a retired police officer, whom he knew, on September 26, 2012. Lieutenant Adams thereafter interviewed Holley, who admitted that he had stolen the items from the automobiles. Holley claimed to have been under the influence of various controlled substances and stated that he had wanted to steal items to sell on the streets. Holley “categorically denied” that McClellion had been involved in the thefts, but he said that McClellion had been in the motel room. (R. 80.) Holley told Lt. Adams that he had used McClellion’s car to commit the thefts. Holley consistently denied that McClellion had been involved in the thefts.
John Coscette, an investigator with the Prattville Police Department, also interviewed Holley, and Holley told Coscette that he had stolen the camera from Boles’s car. Holley did not say that “Ms. McClel-lion had been involved with him in any of his escapades.” (R. 45-46.) Investigator Coscette did not interview McClellion.
On October 3, 2012, McClellion turned herself in to her probation officer. She was wearing one of the T-shirts Dooley used in her real-estate business. She was interviewed by Lt. Adams and denied having been involved in the thefts. She admitted having been in the motel room and initially denied any knowledge that any of the items in the room might not have belonged to Holley. She later stated that she thought there was a possibility that a few of the items might not have been Holley’s. However, she stated that she did not know that the items were stolen until Holley later confessed to her when they saw the police officers around their motel room.
*384 Holley testified that, during the time he was at the Key West, he used McClellion’s car to steal items from various automobiles. He explained his absences to McClellion, who, he testified, did not accompany him when he committed the crimes, by telling her that he was visiting his brother. Holley stated that McClellion had not been with him when he used the stolen credit card to pay for the last night at the Key West. McClellion had been with him when he returned to the Key West and saw police officers around his room. Holley testified that he then explained to McClellion why the police were there; he testified that she had become angry at him because of his crimes.
On appeal, McClellion argues that the evidence was insufficient to sustain her convictions.
Initially, we note:
“In Ex parte J.C., 882 So.2d 274 (Ala.2003), the Alabama Supreme Court stated the standard used to review a claim that the evidence produced at trial was legally insufficient to support a conviction:
“ ‘ “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Crim.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Crim.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978)(emphasis original).”
“ ‘Ex parte Tiller, 796 So.2d 310, 312 (Ala.2001) (quoting Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998)).’
“882 So.2d at 277.”
Reid v. State, 131 So.3d 635, 639 (Ala.Crim.App.2012).
Accepting all the evidence introduced by the State as true, and according the State every legitimate inference from that evidence, and viewing the same evidence in the light most favorable to the State, we conclude that the evidence was insufficient to sustain McClellion’s convictions.
McClellion was charged with multiple counts of unlawfully breaking and entering a vehicle and the multiple counts of theft of property from the pertinent vehicles. Lieutenant Adams testified that there was no physical evidence demonstrating that McClellion broke into or stole property from the automobiles. Law-enforcement officers collected no fingerprint or DNA evidence from any of the automobiles. When asked on direct examination what caused him to believe that McClellion had been involved in the thefts, Lt. Adams testified that the piece of paper on which her name had been written, found near the stolen items in a motel room that had been rented with her credit card, “put her in close proximity to the things that were stolen out of a car or out of vehicles within a day or two after' [they] had been sto *385 len.”[2] (R. 82.) However, that evidence demonstrates only that McClellion was present at the location where the items were taken following the thefts. That evidence alone is insufficient to sustain her convictions for breaking and entering a vehicle, theft in the second degree, and theft in the third degree.
The State argues that “evidence showed that McClellion aided Holley in the commission of the thefts.” (State’s brief, p. 16.) Regarding accomplice liability, this Court has held:
“““[t]he mere fact that a person witnesses a crime does not make him an accomplice.’ Nelson v. State, 405 So.2d 392, 397 (Ala.Cr.App.1980), reversed on other grounds, 405 So.2d 401 (Ala.1981). ‘The mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime.’ Dolvin v. State, 391 So.2d 129, 133 (Ala.Cr.App.1979)", reversed, 391 So.2d 133 (Ala.1980). However, ‘if presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tends to connect the accused with the commission of the crime, then the [trier of fact] may find the accused guilty.’ Dolvin, 391 So.2d at 137. ‘[P]resence, companionship, and conduct before and after the offense are circumstances from which one’s participation in the criminal intent may be inferred.’ 22 C.J.S. Criminal Law § 88(2)(d) (1961). Gibson v. State, 49 Ala.App. 18, 20, 268 So.2d 49 (1972).
[[Image here]]
“ ‘ “Although mere presence at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, presence is a factor to be considered by the [trier of fact] in determining the guilt of the accused because ‘mere presence does establish a “material fact, which is the opportunity of defendant to commit the offense.” ’ German [v. State], 429 So.2d [1138,] 1141 [ (Aa.Crim.App.1982) ].
“ ‘ “To make one accused of a crime an accomplice, ‘the State must adduce some legal evidence implying that he either recruited, helped or counseled in preparing the [crime] or took or undertook some part in its commission. Criminal agency in another’s offense is not shown merely by an exhibition of passivity.’ Pugh v. State, 42 Ala.App. 499, 502, 169 So.2d 27 (1964).”
“ ‘Payne v. State, 487 So.2d 256, 261-62 (Ala.Crim.App.1986). See also Webb v. State, 696 So.2d 295 (Ala.Crim.App.1996).’ ”
Buford v. State, 891 So.2d 423, 428-29 (Ala.Crim.App.2004) (quoting Harris v. State, 854 So.2d 145, 151-52 (Ala.Crim.App.2002)).
The evidence in the instant case does not demonstrate that McClellion aided Holley in the thefts, only that she was present in the room where items from the thefts were located. See Massey v. State, 497 So.2d 590 (Ala.Crim.App.1986) (reversing judgment of conviction and rendering judgment for the defendant because defendant’s presence with two individuals, including admitted accomplice to the theft, in proximity in time and location to the theft was insufficient evidence to corroborate the accomplice’s testimony). As noted above, Lt. Adams testified that he believed *386 that McClellion had been involved in the thefts because a piece of paper, on which her name had been written or doodled, was found near the stolen items in the motel room rented with her credit card. This, he deduced, “put her in close proximity to the things that were stolen out of a car or out of vehicles within a day or two after [they] had been stolen.” (R. 82.) No evidence established that McClellion was present at the time and place of the thefts or that she aided Holley in their commission.[3]
“ ‘[C]ircumstantial evidence is sufficient when it is so strong and cogent as to indicate the guilt of the defendant to a moral certainty. That evidence should also exclude any inference consistent with the defendant’s innocence.’ Ex parte Davis, 548 So.2d 1041, 1044 (Ala.1989), citing Ex parte Locke, 527 So.2d 1347, 1348 (Ala.1988).” Ex parte Mitchell, 723 So.2d 14, 15 (Ala.1998)(reversing judgment adjudicating juvenile a youthful offender for theft of a medical center’s nitrous oxide tanks and rendering judgment in favor of juvenile; circumstantial evidence indicated only that juvenile had been seen in the area of the tanks on the evening before the theft, that the juvenile was admitted to the hospital with severe burns to his hand on the day of the theft, and that a trail of blood from an unidentified individual was found leading from the gas pad to the emergency room). See also McGlon v. State, 504 So.2d 745 (Ala.Crim.App.1987)(reversing a judgment of conviction for possession of burglar’s tools and rendering judgment for defendant when defendant was discovered in the close proximity to an apartment that had been broken into and fled from a “suspicious vehicle,” 504 So.2d 745, that contained a screwdriver, a crescent wrench, a sledgehammer, and a hammer); and Crawford v. State, 100 So.3d 610 (Ala.Crim.App.2011).
Because the evidence failed to demonstrate that McClellion participated in the crimes for which she was convicted, the circuit court erred in denying her motion for judgment of acquittal.[4] Therefore, the circuit court’s judgment is due to be reversed, and a judgment is rendered in favor of McClellion.
REVERSED AND JUDGMENT RENDERED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

. Jeremy Holley’s name is spelled "Holley” in the record. On State’s exhibits 3, 4, and 5, the receipts from the Key West, Holley’s name is spelled "Holly.”

. No evidence was introduced establishing that McClellion is the person who wrote her name on the piece of paper.

. The State also correctly notes that McClel-lion was wearing one of Dooley's T-shirts when she turned herself in. That evidence merely demonstrated that McClellion possessed a stolen item, not that she was present at any theft.

. We note that the jury in this case was not charged regarding any lesser-included offenses. "It is well established that if an appellate court holds the evidence insufficient to support a jury's guilty verdict on a greater offense, but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment on that lesser included offense, provided that the jury was charged on the lesser included offense.” Ex parte Roberts, 662 So.2d 229, 232 (Ala.1995). However, as noted, there was no such charge in this case.