Charles Prantl was indicted on a charge of burglary in the third degree. At the trial, the jury returned a verdict of guilty of burglary in the third degree, and appellant was sentenced under the Habitual Felony Offenders Act to thirty (30) years' imprisonment in the penitentiary.
On Saturday afternoon, November 28, 1981, Shelby County Deputy Sheriff Lloyd Anderson received a call to investigate a burglar alarm. He proceeded to Robert Robinson's cabin on Lay Lake in Shelby County, Alabama. He drove five to ten minutes until he reached Robinson's private road, which was blocked by a locked gate. Deputy Anderson then had to walk down the road through a wooded area to reach the cabin. Upon reaching the cabin he saw two people standing on a landing outside the door on the back side of the cabin. He also saw another person in a boat tied up to a dock 100 to 150 feet away in front of the cabin.
The man and woman outside the cabin went inside as Deputy Anderson watched from the woods. Anderson then went toward the door, drew his gun, and the woman, Karen Prantl, saw him. He instructed her to come down from the landing, and she "hollered" back into the cabin, "Sam, there's a damn deputy out here." The male suspect, Sam Boackle, then came out the door and Anderson arrested both of *Page 783 
them. After arresting these two suspects, the third suspect, who had been sitting in the boat, walked up to the area and was arrested too. Appellant was the third suspect.
An examination of the residence revealed that the burglar alarm wires outside the house had been cut and a window facing away from the lake had been broken, with the screen torn away. Inside, several drawers had been opened, and burglar alarm wires had been ripped off the wall. Some kitchen items had been taken into another room. Nothing was missing from the residence. The audible burglar alarm was sounding through an outside speaker throughout this time.
Before appellant walked up from the boat, Boackle and Karen Prantl told Anderson that they had been on the lake in the boat and had heard the burglar alarm going off, so they went to the cabin to see what was going on. They said when they pulled up to the dock they saw two people run into the woods. When appellant approached Anderson afterwards, he gave the same explanation for being present at the cabin.
Appellant alleges that the evidence presented at trial only shows that he was present at or near the scene, and the facts were insufficient to establish appellant as an accomplice, or to support a conviction, except on mere conjecture, suspicion, or guesswork. An examination of the record reveals that the State proved appellant was present at the cabin when Anderson arrived and when Boackle and Karen Prantl entered the cabin, that the audible burglar alarm was sounding outside the cabin, that a window was broken, and that the contents of the cabin had been rummaged through. Additionally, someone had damaged the burglar alarm wires inside and outside the cabin, and all three suspects gave the same explanation for their presence at the scene.
There was no evidence that anyone had taken any item from the cabin, and no evidence that any of the three had touched anything inside or outside the cabin. There was no evidence of flight or attempted flight by any of the parties. In fact, it is clear that appellant voluntarily, without any prompting by Anderson or any call for aid from his alleged co-conspirators, walked up to the cabin and spoke with Anderson. The only possible incriminating evidence that could be tied to any of the parties was Karen Prantl's statement when she saw Anderson with his gun drawn, "Sam, there's a damn deputy out here."
The applicable test for complicity is whether a defendant, with intent to promote or assist in the perpetration of an offense did aid or abet such other person in committing the offense. § 13A-2-23, Ala. Code (1975). The thrust is to place liability on one who has the more positive mental state of promoting or actively assisting in the perpetration of an offense. Besides the mere presence of appellant at the scene, the State must show some evidence that appellant either recruited, helped, or counseled in preparing the crime, or undertook some part in its commission. Pugh v. State,42 Ala. App. 499, 169 So.2d 27 (1964). Aiding and abetting comprehends all assistance rendered by acts, or words of encouragement, or support or presence, actual or constructive, to render assistance should it become necessary, and no particular acts are necessary. Watkins v. State, 357 So.2d 156
(Ala.Crim.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978);White v. State, 42 Ala. App. 249, 160 So.2d 496 (1964); Fullerv. State, 43 Ala. App. 632, 198 So.2d 625 (1966).
In appellee's brief, the State asserts that "Even though Appellant may not have actually entered the house, or broken the window, he was present to render assistance to his wife during the burglary, if it became necessary." There was no evidence that Karen Prantl was appellant's wife or ex-wife, other than an assumption by Deputy Anderson that this was a fact. In fact, in oral arguments before this court, appellee submitted that appellant was not married to Karen Prantl. There was also no evidence concerning any relationship between appellant and Sam Boackle. The *Page 784 
State submits that the evidence that appellant was present at the scene along with these two was enough to show he was actively involved in the commission of a burglary. We must disagree.
The State relies on Sanders v. State, 423 So.2d 348
(Ala.Crim.App. 1982), and Watkins v. State, supra, to support the allegation that no particular acts by a defendant are necessary to show aiding and abetting. An examination of the surrounding circumstances would show a defendant was present to render assistance and, therefore, it would be sufficient to connect that defendant with the criminal act. But each of these cases is distinguishable from this present case. In Sanders, supra, the defendant's demeanor and conduct, coupled with immediate flight from the robbery, were sufficient to uphold his conviction. In Watkins, there was evidence presented that the defendant actually took the stolen money and fled with his co-defendants when confronted by the police.
Appellant makes a more convincing argument with Thomas v.State, 363 So.2d 1020 (Ala.Crim.App. 1978):
 "The mere fact that a defendant is sitting in the driver's seat of an automobile into which a robber enters affords no legal inference that the defendant is the `get-away' driver or a participant in the robbery. While such circumstances do raise a suspicion that the defendant might be involved in the crime, they alone afford no circumstantial evidence of involvement or participation but only tend to support the possibility."
363 So.2d at 1023. This case is also analogous to Thomas, in that there was no evidence at the time defendant made his motion to exclude which would justify or support an inference that appellant had any knowledge that a crime was going to be committed, or, in this present case, evidence that appellant had knowledge that a crime was ever committed. There was no evidence that appellant could see the broken window from the boat or that he could have seen Boackle and Karen Prantl enter the door. The evidence that was presented at trial creates a suspicion of guilt, but is wholly insufficient to support a conviction of appellant.
Viewing the evidence in the light most favorable to the prosecution, it is apparent that the State proved appellant was present at the scene, but failed to prove that appellant was there to assist anyone present to commit a burglary.
The State argues that the question of whether appellant was an aider or abetter was for the jury to decide. The proper standard for review is whether there existed legal evidence before the jury, at the time the motion to exclude was made, from which the jury could, by fair inference, have found defendant guilty. In applying this standard, this court will not assume the task of determining the probative force and weight of the evidence, but will only determine if legal evidence was presented from which the jury, by fair inference, could have found the defendant guilty beyond a reasonable doubt. Thomas, supra at 1022; Daniels v. State, 343 So.2d 566
(Ala.Crim.App. 1977). While aiding and abetting is an issue for the jury to decide, there was not enough evidence presented by the State in this case for the matter to go to the jury. Appellant's motion to exclude should have been granted. For that reason, this case is reversed.
The double jeopardy clauses of the Fifth Amendment to the Constitution of the United States and of the Alabama Constitution preclude a second trial once a reviewing court has found the evidence presented at trial insufficient to sustain the jury's verdict of guilty. The prosecution is not afforded another opportunity to supply the evidence which it failed to muster in the first trial. This case must, therefore, be reversed and rendered. Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Thomas v. State, supra.
REVERSED AND RENDERED.
All the Judges concur. *Page 785