502 So.2d 808 (1986)
Ex parte State of Alabama.
(Re STATE of Alabama
v.
Bobby CALHOUN and Malcolm Schartau).
85-594.
Supreme Court of Alabama.
November 21, 1986.
Rehearing Denied January 9, 1987.
*809 Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston III, Asst. Atty. Gen., for petitioner.
Don P. Bennett of Herring & Bennett, Dothan, for respondent Bobby Calhoun.
W. Terry Bullard, Dothan, for respondent Malcolm Schartau.
BEATTY, Justice.
This is a search and seizure case.
For the sake of clarity, we reiterate the facts which were revealed at the hearing on the defendants' motion to suppress, as set out in the opinion of the Court of Criminal Appeals, in State v. Calhoun, 502 So.2d 795 (Ala.Crim.App.1986):
"Sometime between 1:00 and 2:00 on the afternoon of February 4, 1985, John Givens, a narcotics officer with the Dothan *810 Police Department, received a phone call at his house from a confidential informant. The informant had provided Givens with information in the past and the information had been reliable. Givens had made cases from information received from this informant in the past and convictions had been obtained from this informant.
"The informant told Givens that Calhoun and Schartau would be `... together that evening and that they would be making a trip to an area in Wicksburg unknownjust in the Wicksburg area, and they would be buying dopemarijuana, particularly.' (R. 5-6). The informant said that the appellees would leave Coy's Gameroom that night in a maroon El Camino and would return to Coy's after making the buy.
"Shortly after the call, Givens and Officer White of the Dothan Police Department, met the informant at the K-Mart parking lot in Dothan. Two other people were present at the meeting at the Mart parking lot. One was an unidentified female and the other was Susan Norton, a friend of the informant's and appellee Schartau's wife.
"At the meeting in the parking lot, White and Givens remained in their vehicle while the informant talked to them through the window. Givens and White asked the informant if they could make a purchase from the appellees. The informant replied that this was unlikely since the appellees did not know them or might recognize them as narcotics agents.
"At this point, a plan was conceived whereby the officers would supply Norton with $40 which she would give to her husband so that he could purchase marijuana for her and deliver it to her at Coy's Gameroom.
"Givens and White then returned to the police station. The informant, Norton and the unidentified female also came to the station. There, Givens gave the informant the $40. From this point, there was no further contact between the officers and the informant or Norton until after the arrest of the appellees.
"That night, Officers Givens and White drove to Coy's Gameroom and parked. At some point, the maroon El Camino left Coy's. The officers followed this vehicle on Highway 84 around the circle and determined it was going towards Wicksburg. The officers then returned to Coy's and waited until the El Camino returned.
"When this vehicle got back to the parking lot of Coy's, the officers approached the vehicle. Officer Givens approached the driver's side of the vehicle, identified himself to the driver, advised him of his information and told the driver to get out of the vehicle. The driver was Calhoun. When Calhoun exited the vehicle, Givens could see two hand-rolled marijuana cigarettes in Calhoun's shirt pocket.
"As White approached the passenger side of the vehicle, he saw the passenger (Schartau) shut the glove box. After Schartau got out of the vehicle, White searched Schartau and found a cigarette pack in his shirt pocket with two hand-rolled marijuana cigarettes in it. White further searched the vehicle and found a plastic bag containing plant material in the glove box.
"The appellees were then placed under arrest for possession of marijuana."
The Court of Criminal Appeals affirmed the trial court's ruling and decided that the police did not have probable cause to search either of the defendants.
As to Calhoun, the Court of Criminal Appeals reasoned that the "only information the officers had concerning Calhoun was that he would be with Schartau on the night in question." It held that the mere fact that Calhoun was to accompany Schartau on his trip to purchase the marijuana was not enough to amount to either probable cause to arrest or search, or to a "reasonable suspicion" under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, that court concluded that the officers had no authority to order Calhoun out of the car. Because the marijuana *811 cigarettes in Calhoun's shirt pocket could not be seen until after he had gotten out of the car, the plain view doctrine clearly could not justify his arrest or the seizure of the marijuana.
As to Schartau, the Court of Criminal Appeals concluded that, although the officers had not been given enough information to meet the probable cause standard, their information did rise to the level of creating a "reasonable suspicion" under Terry v. Ohio. Therefore, that court found the officers could "stop" him by ordering him out of the car. However, the court concluded that the ensuing search was improper because (1) there was no probable cause and (2) the officers were not looking for weapons, but for drugs. The court reasoned that Terry v. Ohio did not allow that type of search.
Whether it is decided that the information given to the officers implicated both defendants or only one defendant, the initial question before this Court will not change. That question is: Was the information given to the officers, along with its subsequent partial corroboration, enough to establish probable cause to arrest any defendant? On this issue, we must agree that the Court of Criminal Appeals has followed the proper analysis and reached the correct conclusion, i.e., that no probable cause existed. The police officers simply left too many important questions unanswered, the most important question being, as explained by the Court of Criminal Appeals, whether Schartau ever received the money he needed to purchase the marijuana:
"Therefore, the officers' verification of a few, innocuous details of the tip was not sufficient corroboration to establish probable cause particularly since several important details were not confirmed.
"The informant failed to supply the police with any facts which would provide a basis of knowledge for his tip. In fact, it seems unlikely that there was a basis of knowledge for this tip at the time it was related to the police that afternoon.
"Givens repeatedly testified that Schartau could not buy the marijuana without the money that was supplied by the police and he knew that Schartau did not have any marijuana or money at the time of the informant's tip. (R. 46) Therefore, if Schartau could only buy marijuana if he was supplied money by the police, it can hardly be said that, at the time of the tip, there was a basis of knowledge that Schartau would be purchasing marijuana. Furthermore, the basis of knowledge for the tip could not be inferred from the tip itself since we have already stated the tip was very general in detail.
"As the United States Supreme Court stated in [Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], probable cause deals with `probabilities.' However, in this case, there were no probabilities, only suspicions.

"The police, in order to justify a warrantless arrest of Schartau, had to rely on the assumption that the informant would give the money to Norton, Norton would give it to Schartau and he would agree to purchase the marijuana in the precise manner related in the tip. These assumptions are too tenuous on which to sustain a finding of probable cause. If the informant or Norton could have somehow confirmed the fact that Schartau received the money supplied by the police, probable cause would most likely have been established, considering all of the other circumstances. If the officers had known Schartau received the money and had agreed to the arrangement, they would have had facts within their knowledge, at the time of the arrest, which would have justified a reasonable man in the belief that Schartau had committed a crime. However, after the informant received the money from the officers, there was no further contact between the officers and the informant or Norton until after the arrest.
"After examining all the circumstances in this case, in light of the totality of circumstances analysis set out in Gates, *812 supra, we hold that the officers did not have probable cause to arrest Schartau. Therefore, any evidence seized by the officers as a result of a search of Schartau incident to a lawful arrest was not admissible."
We agree with the decision of the Court of Criminal Appeals that no probable cause existed on the basis of the information given to the police by the informant. The Court of Criminal Appeals also found that the information given to the police, when coupled with the independent corroboration of certain of these details and given the surrounding circumstances, amounted at least to a "reasonable suspicion" under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We must also agree with this conclusion and, for the sake of brevity, refer those interested to the discussion of this issue that is set out in the opinion of the Court of Criminal Appeals. See State v. Calhoun, supra. However, we cannot agree that this "reasonable suspicion" pertained only to Schartau, because we are of the opinion that the officers had a sufficient basis to supsect Calhoun as well as Schartau of criminal activity.
On the basis of a review of the testimony given by Officer Givens at the suppression hearing, we conclude that the information given to the police implicated both Calhoun and Schartau equally. The pertinent portions of this testimony follow:
"Q. Now, this informant, did he give you information on both defendant Schartau and Calhoun?
"....
"Q. This informant, what kind of information did he give you with respect to the defendant?
"A. The informant said that the defendants were together that evening and that they would be making a trip to an area in Wicksburgunknownjust in the Wicksburg area, and they would be buying dopemarijuana, particularly.
"....
"A. The information from the informant about Mr. Calhoun was that he would be with Mr. Schartau.
"Q. Just with him?
"A. That is correct.
"Q. But you know that Mr. Schartau, at the time you were talking to the informantas far as you knew from all the information you hadthat Mr. Schartau did not have any narcotics or any controlled substances?
"A. The information I received was that he was going to purchase them.
"Q. That he was going to purchase them?
"A. Yes, sir.
"Q. But not Mr. Calhoun?
"A. Mr. Calhoun would be with him.
"Q. Would be with himjust with him?
"A. Yes, sir.
"Q. But the information did not connect Mr. Calhoun with any controlled substance, other than the fact that he would be with Mr. Schartau?
"A. That is the only information we had.
"Q. So you really didn't have any information that Mr. Calhoun had any controlled substances on his person at the time you arrested him?
"A. No, sir.
"Q. You only discovered that after you had searched him?
"A. That is correct.
"Q. That is when you arrested him?
"A. That is correct.
"....
"Q. You said when the informant first called you that the informant told you that Mr. Schartau and Mr. Calhoun were going to make a buy?
"A. Yes, sir.
"Q. Both of them?
"A. Yes, sir.
"Q. Are you sure about that?
"A. That they would be together?
"Q. Did they use Calhoun's name?
"A. Called him by a name.
"Q. What name was that?

*813 "A. By his nameBobby Joe Calhoun.
"Q. And the informant told you that he knew Bobby Joe Calhoun, and Bobby Joe Calhoun would be with Mr. Schartau?
"A. Yes, sir.
"....
"Q. And yet you say at the time the informant first called you that afternoon that he implicated Mr. Calhoun as well as Mr. Schartau?
"A. Yes, sir."
While we concede that the officers, as Givens testified, did not know that Calhoun had any controlled substances on his person before they ordered him out of the car, it is clear that no such knowledge was necessary to meet the "reasonable suspicion" standard of Terry v. Ohio. If the officers had known of such a fact, they would have had sufficient personal knowledge of the crime to meet the probable cause standard necessary to effect a valid arrest. However, the information given to the officers was enough, as to each of the defendants, to meet the reasonable suspicion standard of Terry v. Ohio. Therefore, the officers had the authority to order both of the defendants out of the car. See Worthy v. State, 473 So.2d 634 (Ala.Crim. App.1985).
Having determined that the officers were justified in ordering the defendants to get out of the car, we must now determine whether the subsequent seizure of the marijuana from their persons was justified.
The Court of Criminal Appeals correctly recognized that "[n]ot all stops call for a frisk." As explained by the United States Supreme Court in Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972):
"`When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. [Terry v. Ohio,] 392 U.S. [1] at 24 [88 S.Ct. at 1881] [(1968).] The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. Id. at 30 [88 S.Ct. at 1884]...." (Footnote omitted.)
The Court of Criminal Appeals found that the seizure of the marijuana found on Schartau's person was flawed for two reasons. First, it found that the officers had no reason to believe that Schartau was armed and dangerous, and second, it found that the officers had exceeded the limited scope of the search permitted by Terry v. Ohio. Because we agree with the latter reason, we need not determine whether the circumstances of this case justified the officer's "frisk" of Schartau. Clearly, when Officer White searched the cigarette pack he saw in Schartau's pocket, he was looking for evidence of a crime, namely, marijuana, rather than for weapons. As a result, this search for and subsequent seizure of that marijuana found on Schartau's person was unreasonable. See Adams v. Williams, supra. It is important to note that, on the facts of this case, the marijuana cigarettes taken from Schartau's pocket were not plainly visible until after the cigarette package was seized and opened. This particular evidence was correctly suppressed. However, an analysis of the facts and circumstances does not lead us to the same conclusion in regard to that marijuana seized from Calhoun's person.
Officer Givens testified that, once Calhoun had exited the automobile, he could see two hand-rolled marijuana cigarettes in Calhoun's shirt pocket. Because we find, contrary to the Court of Criminal *814 Appeals, that the officers were justified in ordering Calhoun out of the automobile, that marijuana which was plainly visible in Calhoun's shirt pocket could properly be seized under what is known as the "plain view doctrine." See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Although in Coolidge this doctrine was adopted by only a plurality of the Court, it has since been recognized by a majority of that Court. See United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (although this was also a plurality opinion, the Justices differed only as to the application of the doctrine, rather than as to its validity).
In Texas v. Brown, Justice Rehnquist, writing for the plurality, explained:
"In the Coolidge plurality's view, the `plain view' doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied. First, the police officer must lawfully make an `initial intrusion' or otherwise properly be in a position from which he can view a particular area.... Second, the officer must discover incriminating evidence `inadvertently,' which is to say, he may not `know in advance the location of [certain] evidence and intend to seize it,' relying on the plain-view doctrine only as a pretext.... Finally, it must be `immediately apparent' to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure...."
(Footnote and citations omitted.) 460 U.S. at 736-37, 103 S.Ct. at 1540-41. The facts of the present case pertaining to the seizure of the marijuana from Calhoun's person meet these requirements.
We have already explained that the first requirement was met under the standard enunciated in Terry v. Ohio, supra. The second requirement, inadvertence,[1] is also met. As we understand this requirement, all that must be shown is that the police officer did "not `know in advance the location of [certain] evidence and intend to seize it,' relying on the plain-view doctrine only as a pretense." Texas v. Brown, 460 U.S. at 743, 103 S.Ct. at 1544 (quoting Coolidge, 403 U.S. at 470, 91 S.Ct. at 2040). In the present case, there is no indication that the officers knew that, upon ordering Calhoun out of the car, they would see the marijuana in his pocket.
Finally, it is clear to us that the "immediately apparent" requirement of the plain view doctrine has been met.
As this phrase "immediately apparent" was explained by Justice Rehnquist in Texas v. Brown, it does not require that "a police officer `know' that certain items are contraband or evidence of a crime." 460 U.S. at 741, 103 S.Ct. at 1543. Rather, "`[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" 460 U.S. at 741-42, 103 S.Ct. at 1542-43, quoting Payton v. New York, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Thus, all that must be shown is that the officer had probable cause for believing the item seized was associated with criminal activity.
Probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or useful as evidence of a crime; it does not demand any showing that such a belief be correct, or more likely true than false. Texas v. Brown, supra.
*815 Given these principles, it is clear that Officer Givens, a narcotics officer familiar with the appearance and use of marijuana, had probable cause to believe that the hand-rolled cigarettes he saw in Calhoun's pocket were contraband, i.e., marijuana. Therefore, the officer also had probable cause to believe that Calhoun was committing a crime, and he could properly place him under arrest. See United States v. Hensley, supra; Texas v. Brown, supra.
Having lawfully placed Calhoun under arrest, the officers could lawfully search both Calhoun and the automobile he was driving, because it was within his immediate control. See United States v. Hensley, supra; Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). This search could properly include a search of the glove compartment, in which the officers found a bag of marijuana. New York v. Belton, supra; United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). See also United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
Officer Givens's testimony indicated that Schartau was not arrested until after the marijuana was found in the glove compartment. He also testified that the officers had seen Schartau slam the glove compartment shut in a suspicious manner when he saw the officers coming toward him. Given the accompanying circumstances as earlier discussed, the officers, after they discovered the marijuana in the glove compartment, had probable cause to believe that Schartau was also engaging in criminal activity. A reasonable man could so conclude. This conclusion, however, would not justify the search of Schartau's person conducted by the officers prior to his lawful arrest.
In light of the foregoing, the judgment of the Court of Criminal Appeals as to the suppression of those marijuana cigarettes seized from Schartau's person must be affirmed. However, we reverse that court's judgment as to the suppression of both the marijuana found on Calhoun's person and that marijuana seized from the glove compartment of the automobile.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HOUSTON, J., concurs.
TORBERT, C.J., concurs in part and dissents in part, with opinion.
MADDOX and STEAGALL, JJ., concur in part and dissent in part, with opinion by MADDOX, J.
JONES, ALMON, SHORES and ADAMS, JJ., concur in part and dissent in part, with opinion by JONES, J.
TORBERT, Chief Justice (concurring in part and dissenting in part).
I concur in the majority's findings regarding defendant Calhoun. However, I dissent from the conclusion to suppress evidence seized in the search of defendant Schartau's person. I find that search justified as incident to Schartau's lawful arrest, the probable cause for which arose upon the "plain view" discovery of marijuana in defendant Calhoun's shirt pocket.
If, as found by the majority, probable cause to arrest defendant Calhoun arose upon the "plain view" discovery of marijuana in his pocket, then probable cause to arrest Schartau must similarly arise if the acts of Calhoun are imputable to Schartau. The relationship between Calhoun and Schartau, then, will determine the issue of whether there existed probable cause to arrest Schartau.
The majority finds that "the information given to the police implicated both Calhoun and Schartau equally." That information in substance consisted of testimony that Schartau and Calhoun would, together, make a trip in order to purchase marijuana. I believe this testimony supports the additional finding that Calhoun and Schartau acted jointly, in complicity with one another, in committing the criminal offense charged.
*816 Under § 13A-2-23, Code of Alabama 1975, "[t]he applicable test for complicity is whether a defendant, with intent to promote or assist in the perpetration of an offense did aid or abet such other person in committing the offense." Prantl v. State, 462 So.2d 781, 783 (Ala.Crim.App.1984). "Aiding and abetting comprehends all assistance rendered by acts, or words of encouragement, or support or presence, actual or constructive, to render assistance should it become necessary, and no particular acts are necessary." Id., citing Watkins v. State, 357 So.2d 156 (Ala.Crim.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978); White v. State, 42 Ala.App. 249, 160 So.2d 496 (1964); Fuller v. State, 43 Ala. App. 632, 198 So.2d 625 (1966).
However, the "mere presence of a defendant in an automobile is not sufficient to ... prove defendant guilty of aiding and abetting in ... illegal possession." Parks v. State, 46 Ala.App. 722, 724, 248 So.2d 761 (1971); Sanders v. State, 423 So.2d 348 (Ala.Crim.App.1982); Radke v. State, 52 Ala.App. 397, 293 So.2d 312 (1973). In addition to proving presence, the State must show some evidence that defendant "either recruited, helped, or counseled in preparing to commit the crime or took some part in its commission." Prantl v. State, supra, 462 So.2d at 783, citing Pugh v. State, 42 Ala.App. 499, 169 So.2d 27 (1964). See Jones v. State, 481 So.2d 1183 (Ala.Crim.App.1985).
The evidence reveals that Schartau owned the vehicle in which he and Calhoun were occupants at the time of their arrest and which, it may be reasonably inferred, was used to make the trip to purchase the contraband seized. At trial, Sergeant Givens, one of the arresting officers, testified as follows:
"Q At the time you got your information, were you told who was driving that automobile?
"A No, sir.
"Q Do [sic] you know at the time the arrest was made that Mr. Schartau was not driving the automobile?
"A Yes, sir.
"Q Mr. Calhoun was?
"A Yes, sir.
"Q Do you know why Mr. Schartau was not driving?
"A I believe he had run into some trouble.
"Q He didn't have any driver's license?
"A Yes, sir.
"Q Didn't have a driver's license?
"A Yes, sir."
This evidence supports a finding that Schartau, without a driver's license of his own, "recruited" Calhoun as driver in "preparing to commit the crime" and "helped" Calhoun in the preparations for its commission by supplying the vehicle for Calhoun to drive. These findings, combined with Schartau's presence during Calhoun's unlawful possession, lead to the conclusion that Schartau "aided" Calhoun in that unlawful possession.
Moreover, all the evidence supporting this conclusion was known to the arresting officers before they searched Schartau's person. Consequently, an imputation to Schartau of Calhoun's unlawful possession was reasonable in light of this evidence.
Upon the plain view discovery of marijuana in Calhoun's shirt pocket, then, probable cause arose to arrest Schartau. The ensuing search of Schartau's person was thereby justified as a search incident to lawful arrest. I would find the marijuana seized admissible in the prosecution against Schartau and, therefore, would reverse the judgment of the Court of Criminal Appeals.
MADDOX, Justice (Concurring in part and dissenting in part).
I concur in that portion of the opinion which reverses the judgment of the Court of Criminal Appeals as to defendant Calhoun, but I must respectfully dissent from that portion of the opinion which affirms the Court of Criminal Appeals' judgment as to defendant Schartau.
I am of the opinion, based upon the information available to the officers, that they had a sufficient basis to suspect both Calhoun *817 and Schartau of criminal activity. It is uncontradicted that Calhoun was with Schartau and was driving Schartau's car. The facts, as stated in the opinion of the Court of Criminal Appeals and as supplemented by the State, as authorized by Rule 39(k), Ala.R.App.P., show that the officers had reasonable cause to believe that Calhoun and Schartau acted in concert and were equally implicated. Code 1975, § 13A-2-23 and § 13A-4-3. The Court of Criminal Appeals, in fact, concluded that when the officers approached the automobile, they had "a `particularized and objective basis' for suspecting Schartau of criminal activity." Also, both the trial court and the Court of Criminal Appeals agreed that the officers had reasonable suspicion in this case. In fact, the trial court described the suspicion as "strong." As the Court of Criminal Appeals also recognized, such suspicion justified the officers' asking both Calhoun and Schartau to get out of the car, citing Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
The standard required for police officers to stop a citizen for a short time under Terry is "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); see also Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Worthy v. State, 473 So.2d 634 (Ala.Crim.App.1985); Atchley v. State, 393 So.2d 1034 (Ala.Crim.App.1981).
I am of the opinion that the arresting officers, based upon the information available to them, had reasonable suspicion to believe that both of the defendants were engaged in criminal activity, and, therefore, had authority to ask them to get out of the car, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and that, based on the "totality of circumstances," the officers had probable cause to seize the contraband without first procuring a warrant. Cf. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). See also, Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973), where the defendant was convicted of possessing marijuana and this Court, Bloodworth, J., held that where officers had stopped a vehicle and arrested the driver for traffic violations, and at that time the police officers had a police report that the vehicle was stolen, and because, as one of the officers approached the vehicle, the defendant, a passenger in the back seat and behind the driver, was observed to toss a Kleenex box over his shoulder onto the ledge in back of the seat, there was sufficient probable cause to conduct a search of the vehicle.
Based on the foregoing, therefore, I would reverse the judgment of the Court of Criminal Appeals and remand the cause to that court. Consequently, I concur in part and dissent in part.
STEAGALL, J., concurs.
JONES, Justice (concurring in part and dissenting in part).
I concur in the opinion as to its decision regarding the suppression of that evidence taken from the person of Schartau. However, on all other issues, I dissent. I would quash the writ as having been improvidently granted.
ALMON, SHORES and ADAMS, JJ., concur.
NOTES
[1] The vitality of this requirement of inadvertence has been called into doubt. In Texas v. Brown, although the Court expressly found that the requirement was met on the facts of that specific case, the Court refused to discuss whether inadvertence was really a necessary requirement in establishing "plain view." 460 U.S. at 743, 103 S.Ct. at 1544. Our view is in line with that expressed by Justice White in his concurring opinion in Texas v. Brown, i.e., that the viewing need not be inadvertent. See 460 U.S. at 744, 103 S.Ct. at 1544. Nothing in this opinion should be construed to the contrary.