MAIN, Judge.
Maxine Williams was convicted of one count of unlawful possession of a controlled substance, see § 13A-12-212, Ala. Code 1975, and one count of chemical endangerment of a child, see § 26-15-3.2, Ala.Code 1975. The trial court sentenced Williams, as a habitual offender, to concurrent terms of 15 years’ imprisonment on each count. Williams filed a motion for a *369 new trial, which the trial court denied. This appeal followed.
On January 31, 2008, Officer Jason Adkins of the City of Dothan Police Department, accompanied by other officers of the Dothan Police Department, obtained and executed a search warrant at 626 Chickasaw Street because a confidential informant, who had been at the residence earlier that day, had informed Officer Adkins that drugs were being sold from the house and that guns were being kept there.
As the officers approached the house, they saw two African-American males standing near the rear of the house. Officer Adkins and another officer moved toward the side door of the house, and two other officers headed in the direction of the men in the backyard, who fled. Officers apprehended one of the men, who was later identified as Anthony Hamilton. During a search of Hamilton, the police found what appeared to be a crack pipe containing cocaine residue.
While the other officers pursued Hamilton and the other male, Officer Adkins knocked on the door and announced his presence. Approximately 15 seconds after he knocked and heard movement inside the house, Officer Adkins broke through the door. Williams, two other adult women, a 10-year-old girl, and an infant were in the living room when the officers entered. After securing everyone, the officers searched the house.
In the rear bedroom of the house, Officer Adkins found Williams’s purse near the nightstand. He also noticed women’s clothing lying about the room and photographs of Williams posted on the mirror. During his search of the rear bedroom, Officer Adkins found hidden between the mattress and the box springs a DVD case containing two pieces of crack cocaine.[1]
In the kitchen, Officer Adkins discovered a prescription bottle with Williams’s name on it that contained more crack cocaine. Outside the back door, which led from the kitchen to the backyard, officers found another DVD case on a table and another on the ground near where the two males had been when the officers first approached. The case on the table contained crack cocaine.
In addition to the drug evidence in the bedroom and in Williams’s prescription bottle, Officer Adkins found a loaded shotgun under a window near the backdoor. On the window sill above the shotgun, Officer Adkins found an off-white powdered substance lodged between the window sill and the wall. Officer Adkins also found more off-white powdered substance inside a cabinet in the kitchen, wedged between the cabinet and the wall. Finally, the officers found a second shotgun inside the house as well as additional pills around the house.
Although the physical evidence at the residence indicated that Williams had some connection to it and Officer Adkins testified that he knew that Williams lived there, she denied that she lived there when she spoke with Officer Adkins. Officer Adkins testified that the utilities for the house were registered in the name of Maggie Johnson. However, neither of the two women with Williams were identified as Maggie Johnson, and there was no evidence indicating that Johnson actually lived there. Williams did not testify.
I.
Williams first argues that the trial court erred in denying her Batson[2] motion be *370 cause she contends that she made a prima facie case of racial discrimination based on the State’s striking all but two of the African-American veniremembers from the jury. Specifically, she claims error because the State struck potential juror no. 133, R.N.J., an African-American female, who, Williams argued, had not provided any negative responses to the prosecutor’s questioning during voir dire. Williams maintains that she established a prima fa-cie case of discrimination and that the trial court erred in not requiring the State to articulate race-neutral reasons for its strikes.
During jury selection, the defense made a Batson motion after the State struck R.N.J. Specifically, the following exchange occurred:
“[DEFENSE COUNSEL]: Ms. Maxine Williams is a black female. She is part of the minority. Juror Number 133 is also a minority class. The State struck her as their last strike. I am not aware of any negative response with the State in reference to Juror Number 133, so I will ask that they be ordered to give a race-neutral reason for striking.
“THE COURT: It is the State’s last strike?
“[DEFENSE COUNSEL]: Yes, Your Honor.
“THE COURT: How many black jurors are on the actual jury panel? “[DEFENSE COUNSEL]: Two. Well, three counting her.
“THE COURT: I’m going to find that the Defense has failed to make a prima facie case of a Batson violation. So I will not require the State to give any reasons for the strike of this particular juror.”
(R. 18.)
Initially, we note that Williams failed to provide a complete record on appeal. The recoi'd indicates that the jury venire was composed of 36 persons. One person failed to report for jury duty, leaving 35 in the jury venire. The State had 12 peremptory strikes; Williams had 11 peremptory strikes. (C. 36.) Although the jury strike list is a part of the record and the trial court stated for the record the names of the jurors who were empaneled, the record does not include, a transcription of the voir dire of the venire by the State and Williams or of the actual striking of the jury. The record, however, does show that two African-Americans remained on the jury. Regardless, nothing in the record indicates the actual race of any of the other prospective jurors. As we stated in Johnson v. State, 823 So.2d 1 (Ala.Crim. App.2001):
“Initially, we note that the record does not contain any documents that show the race of the prospective jurors on the venire or of the members of the jury itself. The jury strike list is not in the record, nor is the striking of the jury included in the trial transcript.... Other than defense counsel’s assertions in support of the Batson motion, there is simply no evidence in the record of the race of prospective jurors on the venire, of which prospective jurors were struck by the State and which were struck by the defense, or even of the identity or race of the jurors who ultimately sat on Johnson’s jury. ‘It is the appellant’s duty to provide this Court with a complete record on appeal.’ Knight v. State, 621 So.2d 394, 395 (Ala.Crim.App.1993). ‘ “Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.” ’ Owens v. State, 597 So.2d 734, 736 (Ala.Crim.App.1992), quoting Jolly v. State, 405 So.2d 76, 77 (Ala.Crim.App.1981). ‘This court will not presume error from a silent record.’ Frazier v. State, 758 So.2d 577, 600 (Ala. *371 Crim.App.), aff'd, 758 So.2d 611 (Ala. 1999), cert. denied, 531 U.S. 843, 121 S.Ct. 109, 148 L.Ed.2d 66 (2000). See also Roberts v. State, 627 So.2d 1114, 1116 (Ala.Crim.App.1993).”
823 So.2d at 18-19. See also Finney v. State, 860 So.2d 367, 376-77 (Ala.Crim.App.2002).
Moreover, “[w]e will reverse the circuit court’s ruling on the Batson motion only if it is ‘clearly erroneous.’ Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989).” Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992). “ ‘ “[A] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” ’ ” Fletcher v. State, 703 So.2d 432, 436 (Ala.Crim.App.1997), quoting Davis v. State, 555 So.2d 309, 312 (Ala.Crim.App.1989), quoting in turn Powell v. State, 548 So.2d 590, 594 (Ala.Crim.App.1988). “‘The party alleging racially discriminatory use of peremptory challenges bears the burden of establishing a prima facie case of discrimination.’ ” Rogers v. State, 819 So.2d 643, 648-49 (Ala.Crim.App.2001), quoting Burgess v. State, 811 So.2d 557, 572 (Ala.Crim.App.1998). A determination regarding a moving party’s showing of intent to discriminate under Batson is “ ‘a pure issue of fact subject to review under a deferential standard.’” Armstrong v. State, 710 So.2d 531, 534 (Ala.Crim.App.1997), quoting Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). “After the appellant makes a timely Batson motion and establishes a prima facie showing of discrimination, the burden shifts to the State to provide a race-neutral reason for each strike.... See, e.g., Ex parte Bird, 594 So.2d 676 (Ala.1991).” Cooper, 611 So.2d at 463. Once the prosecutor has articulated race-neutral reasons for the strike, the moving party can then offer evidence showing that those reasons are merely a sham or pretext. Ex parte Branch, 526 So.2d 609, 624 (Ala.1987).
 In this case, there was simply no evidence presented indicating that any of the factors set out in Ex parte Branch, supra, which may be used to establish a prima facie case, existed. Regarding potential juror no. 133, R.N.J., the trial court denied Williams’s Batson motion without requiring a response from the State. With respect to this challenge, Williams argued only that R.N.J. had not provided an adverse response to voir dire questioning and speculated as to the State’s reasons for striking R.N.J., and further asserted generally that the jury was composed of too few minority ethnic groups. “ ‘[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case.’ ” Mitchell v. State, 579 So.2d 45, 48 (Ala.Crim.App.1991), quoting United States v. Moore, 895 F.2d 484, 485 (8th Cir.1990). The record indicates that, along with the rest of the veniremembers, R.N.J. was asked general questions by the trial court before voir dire by the State and Williams, although she failed to respond to any of these questions. (R. 9-17.) Because the record does not contain the voir dire by either party, we do not know what questions were asked by the State or Williams nor do we know how R.N.J. responded. Williams’s arguments alone were not sufficient to prove a prima facie evidence of a Batson violation. Accordingly, we cannot say that the trial court erred in denying Williams’s Batson motion with respect to potential juror no. 133.
II.
Williams next argues that the trial court erred in denying her motion to suppress. She contends that there was a lack of *372 probable cause for the issuance of the search warrant that yielded the evidence because, she says, the confidential informant was not reliable and the supporting affidavit contained false information.
At the suppression hearing on Williams’s oral motion to suppress, which occurred on the day of trial, Officer Adkins testified that he obtained a search warrant on the evening of January 31, 2008 for the house where Williams was residing based on information he had received approximately two hours earlier from a confidential informant. Specifically, the confidential informant, whom he had used at least five times before and who had proven to be reliable, told Officer Adkins that drugs were being sold from the back door of the house at 626 Chickasaw Street in Dothan and that guns were also in the house. Officer Adkins testified that, although he did not have a copy of the supporting affidavit and he did not believe that the supporting affidavit specifically listed Williams, he knew that Williams resided at that house. In denying the motion to suppress, the trial court said:
“THE COURT: I’m going to deny the motion to suppress. I believe there was a factual basis for the informant’s knowledge, and I also find that there is testimony which I find that he was a reliable informant.
“And as far as the affidavit, or the allegation that the affidavit did not support the issu[anc]e of the search warrant, of course, I haven’t been presented with that affidavit so I can’t review that. But based on what I’ve heard concerning the factual basis and the reliability of the informant, I find that the search warrant would have been proper, so I deny the motion to suppress.”
(R. 37-38.)
In this case, during the suppression hearing, Williams never presented any evidence of either the contents of the affidavit or of any other information that may have been presented to the judge issuing the search warrant. The affidavit and search warrant were not presented to the trial court below and, thus, are not a part of the record on appeal. We cannot review the merits of Williams’s allegation concerning the sufficiency of the affidavit supporting the search warrant because Williams did not offer the affidavit into evidence below. See Andujar v. State, 572 So.2d 1319, 1321 (Ala.Crim.App.1990) (holding that “[t]his Court cannot review the merits of the defendant’s allegation concerning the insufficiency of the affidavit to support the search warrant because the affidavit was not admitted into evidence in the trial court and is not contained in the record on appeal”). See also Jolly v. State, 858 So.2d 305, 309 (Ala.Crim.App.2002) (providing that “the affidavit and search warrant [the appellant] complains of are not included in the record on appeal; therefore, this issue is not properly before this Court on appeal”); Williams v. State, 794 So.2d 441, 442 (Ala.Crim.App.2000) (“Because the search warrant and the accompanying affidavit were not made a part of the record, [this Court] cannot consider the appellant’s argument.”). Thus, because this issue is not properly before us, Williams is not entitled to a reversal on this claim.
III.
Lastly, Williams challenges the sufficiency of the evidence on the possession-of-cocaine conviction[3] and the chemical-endangerment-to-a-child conviction.[4]
As to the sufficiency of the evidence,
*373 “[i]n deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State, When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
“Tn determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution’ Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
[[Image here]]
“ ‘ “The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (I960).’ Granger [v. State ], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989). Also,
“ ‘[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evi *374 dence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).’
“Ward [v. State], 610 So.2d [1190] at 1191-92 [ (Ala.Crim.App.1992) ].”
Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997).
“““Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant’s guilt is a question for the jury and not the court.’ [Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978) ]; Cannon v. State, 17 Ala.App. 82, 81 So. 860 (1919). Our function is not to be factfinders, however tempting that may sometimes be. We must not substitute ourselves for jurors, nor play their role in the criminal process. Jury verdicts should not be disturbed unless they are not based upon evidence sufficient to meet the test set out above.” ’ ”
Gissendanner v. State, 949 So.2d 956, 973 (Ala.Crim.App.2006), quoting Parker v. State, 589 So.2d 773, 776 (Ala.Crim.App.1991), quoting in turn Linzy v. State, 455 So.2d 260, 262 (Ala.Crim.App.1984).
Additionally, it is well settled that “[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.” Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996), aff'd, 698 So.2d 219 (Ala.1997).
“In Johnson v. State, 555 So.2d 818, 819-20 (Ala.Cr.App.1989), this court noted the difference in ‘sufficiency’ and ‘weight’ as follows:
“ ‘The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, “viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt.” Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord, Prantl v. State, 462 So.2d 781, 784 (Ala.Cr.App.1984).
[[Image here]]
“ ‘In contrast, “[t]he ‘weight of the evidence’ refers to ‘a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.’ ” Tibbs v. Florida, 457 U.S. at 37-38 [102 S.Ct. at 2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). ‘“[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ” Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App.1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931)).[’]
“(Emphasis in original.) See Smith v. State, 604 So.2d 434 (Ala.Cr.App.1992); Pearson v. State, 601 So.2d 1119 (Ala.Cr.App.1992); Curry v. State, 601 So.2d 157 (Ala.Cr.App.1992).”
Zumbado v. State, 615 So.2d 1223, 1240-41 (Ala.Crim.App.1993).
A.
Williams asserts that the State offered insufficient evidence to convict her of unlawful possession of a controlled substance.
*375 To establish a prima facie case of possession of a controlled substance, the State must prove that Williams possessed one of the controlled substances enumerated in Schedules I through V, in this case, cocaine. §§ 20-2-20 through 20-2-31, Ala. Code 1975; see § 13A-12-212, Ala.Code 1975. Pursuant to § 13A-1-2(13), Aa. Code 1975, in order to possess, one must “have physical possession or otherwise exercise dominion or control over tangible property.” Because Williams was not in actual possession of the cocaine in this case, the question becomes whether she was in constructive possession. Regarding constructive possession, the Aabama Supreme Court has stated:
“ ‘In order to establish constructive possession, the State must prove “(1) [a]ctual or potential physical control,
(2) intention to exercise dominion and
(3) external manifestations of intent and control.” ’
“Ex parte Fitkin, 781 So.2d 182, 183 (Aa.2000) (quoting Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App.1995)). Where contraband is seized inside a residence, ‘constructive possession can only arise “where the prohibited material is found on the premises owned or controlled by the appellant.” ’ Crane v. State, 401 So.2d 148, 149 (Ala.Crim.App.1981) (quoting Williams v. State, 340 So.2d 1144, 1145 (Ala.Crim.App.1976)). ‘ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances.” ’ Ex parte Tiller, 796 So.2d [310] at 312 [(Ala.2001) ] (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997)).
“ “While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
“ ‘ “(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.” ’
“Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984) (quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978)).”
Ex parte J.C., 882 So.2d 274, 277-78 (Ala.2003). “Furthermore, knowledge is usually established by circumstantial evidence.” Mitchell v. State, 713 So.2d 981, 984 (Ala.Crim.App.1997), citing Rowell v. State, 666 So.2d 830 (Ala.1995), and Ward v. State, 484 So.2d 536 (Ala.Crim.App.1985). Moreover, constructive possession of a controlled substance may be established by circumstantial as well as direct evidence. Knight v. State, 622 So.2d 426, 430-31 (Aa.Crim.App.1992). Finally, “ ‘[t]he kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case.’ ” McGruder v. State, 560 So.2d 1137, *376 1140 (Ala.Crim.App.1989), quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978).
In the present case, the State presented evidence indicating that cocaine was found in a bedroom that appeared to be Williams’s bedroom because the authorities found her purse and other personal items in that room. The State also presented evidence indicating that a prescription bottle bearing Williams’s name found in the kitchen contained cocaine. The evidence also indicated that Williams was known to reside at the residence located at 626 Chickasaw Street in Dothan. Thus, given the evidence in this case, the jury could have concluded that Williams was connected with the cocaine so that reasonable inferences could be drawn that she had knowledge of the existence of the cocaine, that she had control over the cocaine, and that she had the necessary intent to exercise dominion over the cocaine.
This Court must consider the evidence in a light most favorable to the State and determine “whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.” Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978). Here, the evidence established a connection between Williams and the cocaine sufficient to meet the State’s burden of presenting evidence of constructive possession, and the trial court properly submitted the case to the jury for it to resolve any conflicts in the evidence. The jury resolved any conflicts adversely to Williams, and this Court will not go behind that verdict.
B.
With regard to the conviction for chemical endangerment of a child, Williams asserts that the State did not establish that she was a “responsible person.” We agree.
Section 26-15-3.2, Ala.Code 1975, provides:
“(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment in which he or she does any of the following:
“(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260. A violation under this subdivision is a Class C felony.”
A “responsible person” is defined as:
“[A] child’s natural parent, stepparent, adoptive parent, legal guardian, custodian or any other person who has .the permanent or temporary care or custody or responsibility for the supervision of a child.”
§ 26-15-2(4), Ala.Code 1975.
In this case, the State did not present sufficient evidence indicating that Williams was a “responsible person” as that term is defined in the statute. At most, it presented evidence indicating that 2 children, one an infant and the other a 10-year-old female, were in the front room of the house with Williams and two other adult females when officers executed the search warrant. Thus, we conclude that the evidence was insufficient to prove that Williams was a responsible person. Therefore, her conviction and sentence for chemical endangerment of a child are due to be reversed.
Based on the foregoing, we affirm Williams’s conviction for unlawful possession of a controlled substance. However, we remand this case to the trial court for that court to vacate Williams’s conviction and sentence for chemical endangerment of a child.
*377 AFFIRMED AS TO CONVICTION FOR UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE; REVERSED AS TO CONVICTION FOR CHEMICAL ENDANGERMENT OF A CHILD; AND REMANDED.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.

. The record appears to identify the case as a CD case; however, it was in fact a DVD case.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. Claim IV in Williams’s brief to this Court.

. Claims III in Williams’s brief to this Court.